Gordon Y. BILLARD and Edith Citron, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

ROCKWELL INTERNATIONAL CORPORATION and Lehman Brothers Kuhn Loeb, Inc., Defendants.

No. 78 Civ. 4543 (MEL).

United States District Court, S. D. New York.

Feb. 20, 1980.

Kelly, Black, Black, Wright & Earle, P. A., Kenny, Nachwalter & Seymour, P. A., Miami, Fla., Kaufman, Taylor, Kimmel & Miller, New York City, for plaintiffs; Stan-

ley L. Kaufman, Irving Malchman, New York City, of counsel.

Chadbourne, Parke, Whiteside & Wolff, New York City, for defendant Rockwell Intern. Corp.; Donald I. Strauber, Edwin D. Scott, Terry A. Thompson, John J. Kallaugher, New York City, of counsel.

Simpson, Thacher & Bartlett, New York City, for defendant Lehman Bros. Kuhn Loeb, Inc.

LASKER, District Judge.

The complaint in this action by Gordon Billard and Edith Citron alleges a violation of ·section 10(b) of the Securities and Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b–5, 17 C.F.R. § 240.10b–5, and a pendant state law claim. Billard and Citron move for class certification. Defendants move for summary judgment against Billard, on the grounds that his claims are barred as *res judicata,* and to dismiss the pendant state law claim, as barred by the statute of limitations. Each motion involves complex issues of fact and law, and none is likely to narrow significantly the scope of the case if granted.

On its face the complaint raises a serious question as to whether the plaintiffs can prove that the alleged misrepresentation was the cause of the alleged injury. Since such causation is an essential element of the plaintiffs' federal cause of action, the interests of judicial economy are' best served if this issue is addressed at the outset of the litigation.

## I.

The substance of the complaint can be described as follows:

On August 10, 1973, Rockwell International Corp., which controlled the Board of Directors of Collins Radio Co., announced that it would soon make a tender offer for Collins common stock, and that if it acquired two-thirds of the outstanding shares (the portion required for shareholder approval of a merger), it would merge Collins into itself. Collins stock was then trading on the New York Stock Exchange at $21¼ per share; the announcement stated that Rockwell would pay $25 for each share tendered and for each share acquired in the proposed merger.

At the time of the announcement, Rockwell possessed, but did not disclose, financial information about Collins which, in the words of the complaint, "if known to the financial community, would have caused the price of Collins common stock to be a minimum of $35 per share." Complaint ¶ 13.

On August 20, 1973, Rockwell made a tender offer for Collins common stock on the terms previously announced. *At this time, Rockwell fully disclosed the financial information withheld from the public on August 10.*

The tender offer was successful, and in November, 1973, Collins was merged into Rockwell. At no time after August 10 did the market price of Collins common stock rise above $25 per share.

The two plaintiffs owned shares of Collins common stock: Billard sold his on the open market for $24¼ per share in September, 1973; Citron tendered hers to Rockwell and received $25 per share. They seek to recover from Rockwell and Lehman Brothers Kuhn Loeb, Inc. (formerly Kuhn, Loeb & Co.), Rockwell's investment banker and financial adviser, the difference between what they received for their shares and what they claim they would have received had the defendants not violated federal and state law.

The plaintiffs charge that when Rockwell learned, through its representation on Collins' Board of Directors, that Collins was worth more than its stock was then trading for, it determined "to acquire all of the outstanding common stock of Collins without, however, paying therefor the true value of a minimum of $35 per share." Complaint ¶ 14. According to the complaint, Rockwell's announcement on August 10 was the key element of an alleged attempt to defraud Collins' shareholders, for "Rockwell knew, intended, and was advised by Kuhn, that the effect of such announcement on

August 10, 1973 would be to freeze and place an upper limit upon the price of Collins common stock of $25 per share." *Id.* ¶ 15.

These allegations may well plead fraud or breach of fiduciary duty actionable under state law. The question here is whether the plaintiffs can establish all the essential elements of a federal securities law violation.

## II.

In *Santa Fe Industries, Inc. v. Green*, 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977), the Supreme Court held that a transaction which is "neither deceptive nor manipulative" does not violate section 10(b) or Rule 10b–5. *Id.* at 474, 97 S.Ct. at 1301. The Court there concluded "that a breach of fiduciary duty . . . without any deception, misrepresentation, or nondisclosure, [does not] violate[ ] the statute and the Rule," *id.* at 476, 97 S.Ct. at 1302, and that the prohibition of "manipulation"—conduct "intended to mislead investors by artificially affecting market activity"—does not "bring within the scope of § 10(b) instances of corporate mismanagement . . . in which the essence of the complaint is that shareholders were treated unfairly by a fiduciary," *id.* at 476–477, 97 S.Ct. at 1302–1303.

The complaint here clearly pleads nondisclosure at the time of the August 10 announcement. Even if we assume, however, that this alleged failure to disclose material information contravened Rule 10b–5, the plaintiffs, to prevail, must still prove that the alleged omission *caused their injury.* *Moody v. Bache & Co.*, 570 F.2d 523, 527 (5th Cir. 1978); *Titan Group, Inc. v. Faggen*, 513 F.2d 234, 239 (2d Cir. 1975); *Schlick v. Penn-Dixie Cement Corp.*, 507

F.2d 374, 380–81 (2d Cir. 1974), *cert. denied*, 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975); *Miller v. Schweickart*, 413 F.Supp. 1062, 1067 & n. 17 (S.D.N.Y.1976) (Weinfeld, J.).[1] Thus, if the plaintiffs here can prove only that Rockwell's August 10 announcement limited the market price of Collins common stock, but cannot prove that it was the failure on August 10 to make full disclosure that did so, they cannot sustain a claim under the federal securities laws. And, of course, if the plaintiffs have no federal claim under section 10(b), there is no jurisdictional basis for asserting their pendant state law claim in this court. In the absence of proof that their injury was caused by the deception or manipulation proscribed by the federal statute, the plaintiffs would have to look elsewhere for their remedy. This is consistent with the objective of the federal securities laws, which do not purport to protect investors from every instance of corporate mismanagement, impropriety, or venality, but only to ensure that they have access to all relevant information when faced with an investment decision. The anomaly here is that the plaintiffs concede that at the time they were faced with and made investment decisions respecting their holdings of Collins common stock, all relevant information was available to them.[2]

## III.

To establish the crucial element of causation, the plaintiffs must show that they were injured because Rockwell failed fully to disclose on August 10th the information that it did in fact disclose on August 20.

In the paradigmatic securities fraud action brought under Rule 10b–5, the plaintiff claims to have suffered injury as a direct

---

**1.** The causation requirement is not only an inescapable consequence of the rationale for the implied private right of action under Rule 10b–5 (that the "disregard of the command of a statute is a wrongful act and a tort" for which one who is injured thereby can recover from the tortfeasor, *Kardon v. National Gypsum Co.*, 69 F.Supp. 512, 513 (E.D.Pa.1946)), but an important limitation on the implied private right of action.

**2.** Neither of the plaintiffs purchased or sold Collins common stock between August 10, 1973, and August 20, 1973. Anyone who did would, of course, not face the precise difficulty that the plaintiffs do, but to prevail on a Rule 10b–5 claim might still have to demonstrate that things would have been different had the defendants made full disclosure on August 10.

result of the defendant's misleading statement or omission. In such a case, the causal link between the defendant's misrepresentation and the plaintiff's injury is the plaintiff's actual reliance on the defendant's misstatement, or the presumption that the plaintiff would have relied on the omitted material had it been stated. *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 153–54, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972); *see Titan Group, Inc. v. Faggen*, 513 F.2d 234, 238–39 (2d Cir. 1975). Here the pattern is distinctly different: the injury alleged here is indirect, for the causal link between the defendants' omission and the plaintiffs' injury is the alleged effect of Rockwell's August 10 announcement on the market price of Collins common stock.

Generally, "the proper test to determine whether causation in fact has been established in a non-disclosure case is 'whether the plaintiff would have been influenced to act differently than he did act if the defendant had disclosed to him the undisclosed fact.'" *Shapiro v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 495 F.2d 228, 239 (2d Cir. 1974) (quoting *List v. Fashion Park, Inc.*, 340 F.2d 457, 463 (2d Cir.), *cert. denied*, 382 U.S. 811, 86 S.Ct. 23, 15 L.Ed.2d 60 (1965)). Here, because the plaintiffs claim that their selling price was capped by the market, the question is not whether the *plaintiffs* would have acted differently, but whether the *market* would have, had Rockwell fully disclosed on August 10 the information withheld from the public until August 20. But did the market's reaction to Rockwell's August 10 announcement depend on the alleged failure to disclose, or would the announcement itself have limited the price of Collins stock to no more than $25 per share even if the failure to disclose had not occurred?

Common sense and experience suggest that it would have. In the face of Rockwell's announced plans to acquire all Collins common stock for $25 per share, investors would understandably hesitate before paying more than $25 per share for it, even if they believed it worth more than that amount, since no one could recover more than that amount unless shareholders owning more than one-third of the outstanding shares resisted the tender offer and opposed the proposed merger. Indeed, the plaintiffs concede that after August 20 the financial community was aware of the information "which, if known to the financial community, would have caused the price of Collins common stock to be a minimum of $35 per share," yet the price did not rise above $25 per share. Would it have made a difference had Rockwell disclosed this information on August 10 rather than on August 20? That is the crucial question.

## IV.

Accepting the facts as alleged in the complaint, the plaintiffs, to prevail on their federal claim, must prove that the announcement of Rockwell's plans to acquire Collins on August 10 prevented the disclosure, on August 20, of the information withheld on August 10, from boosting the price of Collins common stock as it otherwise might have. As a practical matter, this seems a tenuous proposition, and one that it may be difficult to prove at trial. At the same time, it is a proposition that could be as readily considered at the outset of the case as at the end. At the very least it seems appropriate, in the circumstances of this case, to put the plaintiffs to their proof to the extent of requiring them to "set forth specific facts showing that there is a genuine issue for trial" with respect to the question of causation. Fed.R.Civ.P. 56(e).

Accordingly, we believe it appropriate to consider how best to address the causation issue at this stage of the proceedings. One alternative would be for the defendants to move for summary judgment dismissing the complaint on the grounds that the plaintiffs cannot prove causation in fact.[3] If the

---

**3.** At a conference held in this case, counsel for Rockwell stated that he had refrained from making a motion for summary judgment on the grounds discussed in this opinion because he believed the plaintiffs would seek full discovery before responding to such a motion. As noted in the text, however, discovery limited to the issue of causation should not be extensive.

defendants can show, on such a motion, that the facts upon which the plaintiffs rely to support their allegations of causation are not susceptible to the interpretation which they seek to give them, the burden will then shift to the plaintiffs to offer evidence supporting their allegations or face summary dismissal of their complaint. *Cf. First National Bank v. Cities Service Co.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968); *Modern Home Institute Inc. v. Hartford Accident & Indemnity Co.,* 513 F.2d 102, 109–111 (2d Cir. 1975). Another alternative would be to try the issue of causation before proceeding with further motion practice.[4] Before either alternative could be attempted, of course, the parties would be entitled to discovery on the issue of causation. However, such limited discovery should not be particularly burdensome or time consuming, especially since on the issue of causation the defendants' knowledge, expectations, or intentions with regard to the market effects of the August 10 announcement would appear to have little probative value. The issue as to causation is not what the defendants thought or hoped would happen, but what in fact did happen. Presumably this would be the subject principally of expert testimony on market dynamics.

Although the procedure adopted here is unusual, it is warranted in the circumstances of the case. The federal judiciary is increasingly burdened by attempts to bring claims under state law before the federal courts in the guise of Rule 10b–5 actions. It is important, therefore, that the courts respond flexibly and responsibly when, as is true here, a serious question appears on the face of the complaint whether, by the nature of the claim, the *sine qua non* of causation can be established. At the least, it is appropriate to make an initial determination that this critical element exists, not only in the interest of judicial economy, but also for the benefit of the parties, who might otherwise incur substantial expense in motion practice and in preparing for an unnecessary trial.

For the reasons stated, decision on the pending motions is reserved. A conference to discuss the alternatives suggested and to determine how to proceed from here will be scheduled forthwith.

It is so ordered.

---

4. Since the plaintiffs seek a jury trial, this alternative might pose special problems.