Sol PELLMAN, Plaintiff,

and

Edith Zakheim and Walter Zakheim,
Intervenor-Plaintiffs,

v.

CINERAMA, INC., Forkel, Inc., Forkel
Enterprises, Inc., Pacific Theatres Corp.,
Nationwide Theatres Corp., William R.
Forman, Michael R. Forman, Harry S.
Buxbaum, James J. Cotter, Frederick
Levy, Jr., Charles P. Emma, Hotel Oper-
ating Company of Hawaii, Ltd., Roy C.
Kelley, Estelle L. Kelley and Richard R.
Kelly, Defendants.

No. 78 Civ. 4508.

United States District Court,
S. D. New York.

Feb. 10, 1981.

Milberg, Weiss, Bershad & Specthrie,
New York City, for plaintiff and interve-
nor-plaintiffs by David J. Bershad, Jerome
Congress, New York City.

Stroock & Stroock & Lavan, New York
City, for defendants by Gary J. Greenberg,
Melvin A. Brosterman, David S. Welkowitz,
New York City.

MEMORANDUM OPINION AND ORDER

SOFAER, District Judge.

Plaintiffs in this securities-fraud suit
have moved for its certification as a class
action. The circumstances of the underly-
ing grievance make class treatment espe-
cially appropriate here, and the motion is
granted.

The background of this litigation is dis-
cussed in an earlier opinion that denied
defendants' motion to dismiss. *Pellman v.
Cinerama, Inc.,* 503 F.Supp. 107 [Current]

Fed.Sec.L.Rep. ¶ 97,107 (S.D.N.Y.1980). The allegations relevant to the instant motion can be summarized briefly. Cinerama was controlled by insiders owning about sixty percent of its shares. Those insiders—the defendants here—decided to go private by merging Cinerama into a new corporation and buying out all minority shareholders at five dollars per share.

Defendants' plan required shareholder approval of the merger, which was solicited by a proxy statement issued on August 3, 1979. Plaintiffs contend that, primarily because of its omissions, the proxy statement was materially misleading, in violation of sections 10(b) and 14(a) of the Securities Exchange Act, 15 U.S.C. §§ 78j(b), 78n(a), and Rules 10b–5 and 14a–9, 17 C.F.R. §§ 240.10b–5, 240.14a–9. On August 29, 1978, the Cinerama shareholders approved the merger, and the public shareholders were bought out of the new entity.

In contrast to many securities class actions, this suit is relatively uncomplicated. The case turns upon the fraudulence vel non of the single proxy statement. The identities of the affected shareholders are readily ascertainable. Plaintiff seeks certification of a class composed of all persons (other than defendants) who owned Cinerama common stock on or after August 3, 1978, the date on which the proxy statement was issued.[1] Given the merger, the closing date of class membership is necessarily August 29, 1978.

Defendants oppose class certification on several grounds; most of their contentions revolve around the issue of reliance. Before subjecting the proposed class action to the scrutiny required by Federal Rule of Civil Procedure 23, therefore, the reliance issue must be addressed.

I. Reliance and Causation

Defendants insist that the reliance issues lurking in this suit preclude its certification as a class action. They claim that the named plaintiffs, who refused to vote in favor of the merger, perforce could not have relied upon the purported misrepresentations in the proxy statement; these plaintiffs would therefore not be typical of the class members and would be subject to unique defenses that could defeat recovery. Moreover, individual questions as to the reliance of those class members who opposed the merger would allegedly prevent common questions from predominating.

■ Defendants misunderstand (or disregard) both the governing legal principles and the theory of this case. The case against defendants rests primarily upon purported material omissions from the proxy statement. To establish causation under section 10(b) or section 14(a), a plaintiff must prove that an omission was material; he need not prove that he relied upon the absence of the information in making his decision. This principle is now settled. See, e. g., Titan Group, Inc., v. Faggen, 513 F.2d 234, 239 (2d Cir.), cert. denied, 423 U.S. 840, 96 S.Ct. 70, 46 L.Ed.2d 59 (1975); Schlick v. Penn-Dixie Cement Corp., 507 F.2d 374, 380–84 (2d Cir. 1974), cert. denied, 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975). Accordingly, courts have consistently refused to deny class certification in omission cases because of purported nonreliance. See, e. g., Herbst v. ITT Corp., 495 F.2d 1308, 1316 (2d Cir. 1974); Tucker v. Arthur Andersen & Co., 67 F.R.D. 468, 477–81 (S.D.N.Y.1975) (Werker, J.); Dorfman v. First Boston Corp., 62 F.R.D. 466, 470–71 (E.D.Pa.1973).

Defendants argue that these cases merely establish a rebuttable presumption of reliance, and that they can prove that the named plaintiffs did not rely upon the proxy statement. The contention that proof of nonreliance can prevent a plaintiff from establishing causation in an omission case is dubious. See Chris-Craft Industries, Inc. v. Piper Aircraft Corp., 480 F.2d 341, 400 (2d Cir.), cert. denied, 414 U.S. 910, 94 S.Ct. 231, 38 L.Ed.2d 148 (1973). (Mansfield, J., concurring and dissenting). But assuming that defendants are correct as a

1. Plaintiffs' original motion, filed January 15, 1979, sought to include only shareholders as of August 29, 1978. Plaintiffs subsequently moved on September 12, 1979, to include shareholders as of August 3, 1978, and thereafter.

general matter, proof of nonreliance by the plaintiffs in this case would be legally insufficient to defeat their claim. Plaintiffs do not assert that they were individually deceived by the proxy misrepresentations; rather, they insist that enough other shareholders were deceived to obtain approval of the merger and freeze them out. This is a sufficient allegation of causation to establish liability if proven. In a freeze-out situation, the basis of liability is the effect of the omissions on the overall group—not on the named plaintiffs.

The Court of Appeals for the Second Circuit has rejected reliance arguments like those advanced by these defendants in the context of forced sales:

> Whatever need there may be to show reliance in other situations, ... we regard it as unnecessary in the limited instances when no volitional act is required and the result of a forced sale is exactly that intended by the wrongdoer. Since the complaint alleges that plaintiff, in effect, has been forced to divest himself of his stock and that this is what defendants conspired to do, reliance by plaintiff on the claimed deception need not be shown. What must be shown is that there was deception which misled Class A shareholders and that this was in fact the cause of plaintiff's claimed injury.

*Vine v. Beneficial Finance Co.*, 374 F.2d 627, 635 (2d Cir.), *cert. denied*, 389 U.S. 970, 88 S.Ct. 463, 19 L.Ed.2d 460 (1967). Applying that reasoning, the Court of Appeals has refused to bar class certification on reliance grounds in the merger context:

> Here as in *Chris-Craft* and *Mills* [*v. Electric Auto-Lite Co.*, 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593] the reliance of the individual shareholder is irrelevant. Here as in those cases plaintiff was damaged only if significant numbers of shareholders might have acted differently if they had known the truth.
>
> ... [I]t is extremely difficult to prove how shareholders in the aggregate would

have reacted if they had known the whole truth. Therefore, it is appropriate for the district court to presume ... that if there was a material misstatement, then Hartford shareholders would not have exchanged their shares at the rate offered if they had known the truth. Since individual reliance is not a part of plaintiff's case, the district court did not err in holding that common issues of law and fact were predominant.

*Herbst v. ITT Corp.*, supra, 495 F.2d at 1316. *Accord, Billard v. Rockwell International Corp.*, 85 F.R.D. 662, 664–65 (S.D.N.Y.1980) (Lasker, J.); *Weisman v. MCA, Inc.*, 45 F.R.D. 258, 263–64 (D.Del.1968). Accordingly, the reliance vel non of the named plaintiffs will not be an issue in the trial of this action and cannot defeat class certification.

Those shareholders who sold their shares after issuance of the proxy statement and before the consummation of the merger are in a somewhat different position than are the shareholders who were frozen out.[2] Nonetheless, the critical issue as to the selling shareholders, too, is materiality. Moreover, these shareholders might rely upon a "fraud on the market" theory that would obviate the need to demonstrate reliance. *See, e. g., Blackie v. Barrack*, 524 F.2d 891, 906 (9th Cir. 1975), *cert. denied*, 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976); *In re LTV Securities Litigation*, 88 F.R.D. 134, [Current] Fed.Sec.L.Rep. ¶ 97,605, at 98,-230–33 (N.D.Tex.1980). The Court need not now decide whether defendants could defeat the claims of selling shareholders by proving nonreliance. Should it later become necessary or convenient, the Court could exclude selling shareholders from the class or designate them as a subclass.

## II. The Requirements of Rule 23(a)

■ The proposed class satisfies the four requirements of Rule 23(a). First, "the class is so numerous that joinder of all members is impracticable." Records of the American Stock Exchange indicate that ap-

---

2. Plaintiffs do not yet know the number of such shareholders. Between August 3 and August 29, 1978, only 25,800 shares, out of a public float of 870,000 shares (excluding those controlled by defendants), were sold. Plaintiffs' Reply Memorandum at 2 n.1.

proximately 11,700 persons were shareholders-of-record of Cinerama stock on August 29, 1978. Affidavit of Melvyn I. Weiss, January 12, 1979, ¶ 7. Joinder of all these plaintiffs would be impracticable.

The second requirement is that "there are questions of law or fact common to the class." The central questions in this action are common to all class members: e. g., was the proxy statement materially misleading; did defendants conspire to issue materially misleading statements for the purpose of acquiring Cinerama's assets without adequate compensation to the minority shareholders; were defendants' activities in violation of the federal securities laws and/or state law fiduciary obligations; did the conspiracy freeze out minority shareholders at an unreasonably low price? Significantly, plaintiffs' claims turn upon one document sent to all shareholders, rather than upon a multiplicity of acts or communications. Cf. Shapiro v. Merrill Lynch, [1975–76] Fed.Sec. L.Rep. ¶ 95,377, at 98,883 (S.D.N.Y.1975) (Tenney, J.) ("The commonality element is met in a nondisclosure case where all members are owed the same duty and defendants' breach concerns the whole class.")

The third requirement is that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Defendants' contention that plaintiffs are subject to a unique defense of nonreliance is erroneous, for the reasons set forth above. Plaintiffs stand in precisely the same position, with respect to both claims and defenses, as do other shareholders who were bought out. With respect to shareholders who sold between August 3 and August 29, their claims appear at this time to be sufficiently similar to those of the named plaintiffs to permit their inclusion in the class, subject to reconsideration.

■ The fourth requirement is that "representative parties will fairly and adequately protect the interest of the class." This requirement has two components: the named plaintiffs' interests must coincide with those of the class; and plaintiffs and their attorneys must appear likely to prosecute the action vigorously. The former component is akin to the typicality requirement and is similarly satisfied here: plaintiffs' interests do coincide fully with those of the class.

With respect to the vigorous-representation element, defendants concede the "competence and experience of plaintiffs' counsel." Defendants' Memorandum at 5–6 n.4. This concession is justified: by their performance in this litigation and in many prior suits, plaintiffs' lead counsel have demonstrated that they are vigorous, experienced attorneys who will represent the class members fairly and capably.

Defendants insist, however, that plaintiffs Sol Pellman and Edith Zakheim are not proper class representatives because of their ignorance of relevant information and their deference to counsel.[3] Defendants' arguments are contrary to both the facts of this case and the precedents.

With respect to Zakheim, the evidence demonstrates sufficient knowledge of this litigation and sufficient integrity to ensure adequate representation. Defendants consistently exaggerate Zakheim's ignorance. For example, defendants state: "When asked whether she had read the proxy statement Mrs. Zakheim replied, 'I just glanced through it . . . .'" Defendants' Memorandum at 10. Defendants' deletion is misleading, for in fact Zakheim stated: "I just glanced through it and I noticed that—I noticed the name of Forkel. I noticed the name of Kelly. And I saw that they wanted to buy out the stockholders and make it a private company." Zakheim Deposition at 8. Zakheim is the production manager of a magazine. Id. at 34. She believes strongly that defendants acted improperly and robbed her of the true value of her investment. Id. at 7–10, 50–52, 61. She knows that she may represent a class with 11,000 members, id. at 32, and she is firmly committed to paying the costs of notifying the class, id. at 33–35, 38. Her

---

**3.** Plaintiffs have offered no evidence to indicate the adequacy of Walter Zakheim as a representative. Accordingly, the motion to certify him as a class representative is denied.

counsel has promised to adhere to her views, *id.* at 57, and the tenor of her remarks refutes defendants' assertion that she would merely rubberstamp her attorneys' decisions.

The case for certifying Pellman, though less solid than that for Zakheim, is nonetheless sufficient.[4] Pellman, too, believes that he was defrauded by defendants. Pellman Deposition at 53. He is prepared to bear the costs of notice. *Id.* at 32, 115. Defendants repeatedly object that Pellman "had little to do with drawing up his own complaint." Defendants' Memorandum at 12. Pellman's own reply is sufficient: "If I could draw [up] these papers and put on this paper [the complaint] whatever is on this paper, I wouldn't need no attorney." Pellman Deposition at 87.

■ Both Pellman and Zakheim believe in the legitimacy of their grievance, appear to be honest and responsible individuals, and are fully prepared to bear the costs of prosecuting this action. Their unfamiliarity with particular facts is trivial in light of these attributes—particularly given the calibre of their counsel. As other courts in this District have observed, class certification cannot be defeated on the ground that plaintiff "has a limited financial stake in the action and is not knowledgeable about the details of the claims made in her complaint.... The standards of Rule 23(a)(4) are met if it appears that the named plaintiff's interests are not antagonistic to other members of the class and plaintiff's attorney are qualified, experienced and generally able to conduct the litigation." *Richardson v. White, Weld & Co.,* [1979] Fed.Sec.L. Rep. ¶ 96,864, at 95,546 (S.D.N.Y.1979) (Conner, J.). *Accord, In re New York Municipal Securities Litigation,* [Current] Fed.Sec.L. Rep. ¶ 97,528, at 97,762 (S.D.N.Y.1980) (Owen, J.); *Mersay v. First Republic Corp.,* 43 F.R.D. 465, 470–71 (S.D.N.Y.1968) (Metzner, J.).

### III. The Requirements of Rule 23(b)(3)

This type of class action is governed by Rule 23(b)(3), which imposes two requirements in addition to those already discussed. First, the Court must find that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members." As indicated above, with respect to the commonality requirement, virtually all of the major issues in this case are common. Defendants contend that individual questions of reliance will predominate. Even if reliance issues were a factor in the case—an unlikely proposition, given the discussion above—they would at most be subsidiary. *See Blackie v. Barrack, supra,* 524 F.2d at 906–07 n.22. The predominance requirement is met here.

The second requirement of Rule 23(b)(3) is that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." The courts have recognized the general superiority of class actions in securities fraud cases involving large numbers of shareholders. *See, e. g., Escott v. Barchris Construction Corp.,* 340 F.2d 731, 733 (2d Cir.), *cert. denied,* 382 U.S. 816, 86 S.Ct. 37, 15 L.Ed.2d 63 (1965); *Werfel v. Kramarsky,* 61 F.R.D. 674, 682–83 (S.D.N.Y.1974) (MacMahon, J.); *Dolgow v. Anderson,* 43 F.R.D. 472, 488 (E.D.N.Y.1968) (Weinstein, J.).

This particular action will focus upon one proxy statement and a class extending over less than one month. The names of the class members are readily available from Cinerama. Because the average public shareholder as of August 29, 1978 owned only seventy-five shares, it is unlikely that the shareholder claims would be prosecuted absent a class action. Defendants argue, once again, that a class action would be unmanageable because individual trials would be required on the issue of reliance. But a class action would at least permit the materiality issues to be tried in common. On balance, a class action is the superior method for adjudicating plaintiffs' claims.

---

4. Defendants have waived any objections to Pellman on grounds of health or financial capacity; they cannot assume the right to brief issues seriatim if their initial arguments fail. *See* Defendants' Memorandum at 5–6 n.4.

Accordingly, the motion for class certification is granted. The class shall consist of all persons (other than defendants) who owned Cinerama common stock on or after August 3, 1978. The class representatives are Sol Pellman and Edith Zakheim. Plaintiffs shall within thirty days submit a proposed notice to class members. Defendants shall submit objections to that notice within fifteen days of its submission. Defendants shall provide plaintiffs with the names and last known addresses of the class members within thirty days.

SO ORDERED.