Jay H. KOPPEL, Plaintiff,

v.

4987 CORPORATION, 498 Seventh Avenue Associates, Peter L. Malkin, Stanley Katzman, John L. Loehr, Martin D. Newman, and Wien, Malkin & Bettex, Defendants,

and

Garment Capitol Associates, Nominal Defendant.

Arnold E. Greenberg, Plaintiff,

v.

Peter L. Malkin, Stanley Katzman, John L. Loehr, Garment Capitol Associates, Wien, Malkin & Bettex, Donald A. Bettex, Martin D. Newman, 4987 Corporation and 498 Seventh Avenue Associates, Defendants.

Nos. 96 Civ. 7570(RLC), 97 Civ. 1754(RLC).

United States District Court, S.D. New York.

Feb. 1, 2000.

Goodkind Labaton Rudoff & Sucharow LLP, Alan E. Bandler, New York City, for plaintff Jay H. Koppel; Edward Labaton, Joseph Sternberg, Alan E. Bandler, of counsel.

Kaplan, Kilsheimer & Fox, New York City, Mark W. Gaffney, Oyster Bay, NY, Gordon Law Offices Chartered, Boise, ID, for plaintiff Arnold E. Greenberg; Gregory K. Arenson, Mark W. Gaffney, Philip Gordon of counsel.

Dewey Pegno & Kramarsky LLP, Kronish, Lieb, Weiner & Hellman LLP, Thelen Reid & Priest LLP, New York City for defendants; Thomas E.L. Dewey, William J. Schwartz, Richard P. Swanson of counsel.

### OPINION

ROBERT L. CARTER, District Judge.

Plaintiffs Jay H. Koppel and Arnold E. Greenberg ("plaintiffs") move for class certification in their actions against defendants Garment Capitol Associates ("Associates"),[1] 4987 Corporation, 498 Seventh Avenue Associates, Wien, Malkin & Bettex ("WMB"), Pe-

---

1. Associates is a nominal defendant in case number 96 Civ. 7570(RLC) and a defendant in case number 97 Civ. 1754(RLC).

ter L. Malkin, Stanley Katzman, John L. Loehr, Martin D. Newman, and Donald A. Bettex[2] (collectively "defendants"). Plaintiffs are investors in Associates who have raised federal and state law claims in connection with defendants' proposal for the sale of property owned by Associates.

Plaintiffs' actions, consolidated for purposes of disposition, are before the court for a third time. Plaintiffs now move, pursuant to Rule 23, F.R.Civ.P., for an order certifying their actions as class actions and appointing them class representatives.

## BACKGROUND

Familiarity with all prior proceedings is assumed. This opinion presents only the basic facts relating to the court's disposition of the instant motion.

In 1957, Associates was formed by three original partners to acquire a commercial building at 498 Seventh Avenue in Manhattan (the "Building").[3] To raise purchasing capital, the partners sold portions of their individual partnership interests for $10,000 per share to public participants ("Participants"), according to terms set forth in Participation Agreements. Under these Participation Agreements, Associates' partners serve as agents and trustees for their respective Participants and Participants share the profits or losses of Associates in proportion to their individual interests. The Participation Agreements also provide that the consent of all Participants is required to sell, mortgage, or transfer a general partner's partnership interest or any partnership asset, but if ninety percent or more of a general partner's shares consent to a proposed action, the general partner may buy out the remaining Participants at a price determined by the balance of their capital contribution. By 1978, both Koppel and Greenberg had become Participants.

Associates sought the Participants' consent to sell the Building in 1996, after the Building's leaseholder became unable to meet the

terms of the lease. The lease was originally held by defendant 498 Seventh Avenue Associates, a partnership formed to manage the Building (the "Original Lessee"); facing default on real estate taxes and other assessments, the Original Lessee assigned the lease on December 29, 1995, to a newly formed corporation, defendant 4987 Corporation (the "New Lessee"), whose shareholders and ownership interests corresponded identically with the Original Lessee's partners. Defendant Malkin, one of Associates' partners, also held a majority interest in each lessee. On January 2, 1996, the first business day after it was assigned the lease, the New Lessee defaulted on tax payments amounting to nearly $1 million, and it defaulted again in July, 1996, raising the amount owed to nearly $2 million.

Associates did not exercise its option to cancel the lease in response to the default, and the mortgagee did not foreclose on the Building. Instead, at the urging of principals of the New Lessee, the mortgagee provided an additional loan to cure the default in exchange for first priority on any proceeds from the sale of the Building.

In proposing the Building's sale to Participants, Associates distributed a letter dated July 26, 1996, and an accompanying Statement Issued by the Agents in Connection with the Solicitation of Consents of the Participants (the "Solicitation"), seeking consent for: (1) the continued forbearance from terminating the lease, (2) the sale of the Building, (3) the allocation of a portion of the proceeds from the sale of the Building to the New Lessee, and (4) the liquidation of Associates following the distribution of the remaining sale proceeds. Although the Solicitation sought approval in a separate question for the liquidation of Associates, the first three proposals were treated as a single question: whether the Participants approved of the Sale Program. In support of its allocation of a portion of the proceeds from the sale to the New Lessee, the Solicitation re-

**2.** Bettex is a defendant only in case number 97 Civ. 1754(RLC).

**3.** Over time, the identity of Associates' partners has changed. Each of the individual defendants

has been a partner in Associates, as well as a partner in the law firm of WMB, also named as a defendant.

lied on a report (the "Consensus Report"), which concluded that a sizable percentage of the sale price should be transferred to the lessee in compensation for giving up its right to operate the building.

Koppel filed a derivative and class action lawsuit in October; 1996, and Greenberg filed a similar complaint in March, 1997, which he amended in June, 1997. Plaintiffs' remaining federal securities law claims allege violations of § 14(a) of the Securities Exchange Act of 1934 (the "1934 Act"), 15 U.S.C. § 78n(a), specifically of Securities and Exchange Commission ("SEC") Rules 14a–9, 14a–4(a)(3), and 14a–4(b)(1), and are based on allegedly material omissions and misleading statements in the Solicitation, and the allegedly impermissible grouping of the different aspects of the Sale Program into one vote. Plaintiffs' remaining state law claims include allegations by both plaintiffs that defendants Malkin, Katzman, Newman, and Loehr breached their fiduciary duties as partners of Associates. Koppel's complaint also asserts that WMB violated its fiduciary duties to Associates as legal counsel. Greenberg's complaint also charges various defendants with breach of fiduciary duty, aiding and abetting a breach of fiduciary duty, fraudulent scheming and unjust enrichment.

## DISCUSSION

The requirements for certification of a class action pursuant to Rule 23(a), F.R.Civ.

4. Rule 23(a) requires that:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

5. Plaintiffs satisfy numerosity because the proposed class comprises approximately 908 Participants. See Trief v. Dun & Bradstreet Corp., 144 F.R.D. 193, 198 (S.D.N.Y. 1992) (Edelstein, J.) (stating that classes with more than one hundred members satisfy numerosity). Plaintiffs satisfy commonality because the determination as to whether defendants made misleading statements or omissions in the Solicitation, improperly bundled proxy votes, and breached fiduciary duties

P., are numerosity, commonality, typicality and adequacy of representation.[4] In addition to meeting these requirements, plaintiffs must also satisfy one of the three subparagraphs of Rule 23(b), F.R.Civ.P. Defendants do not dispute that plaintiffs have satisfied the Rule 23(a) numerosity and commonality requirements[5] and that plaintiffs have satisfied the Rule 23(b)(1)(B), (b)(2) and (b)(3) requirements.[6] Instead, defendants challenge plaintiffs' motion on the grounds that plaintiffs' claims are not typical of those of the proposed class and that plaintiffs would not adequately represent the proposed class.

 On a motion for class certification the court must accept as true the allegations in a complaint but may consider material extraneous to the pleadings. See 3004 Albany Crescent Tenants' Ass'n v. City of New York, 1999 WL 1067891, at *2 (S.D.N.Y. Nov. 24, 1999) (Jones, J.). Plaintiffs bear the burden of proving that they satisfy the prerequisites of Rule 23. See Amchem Products, Inc. v. Windsor, 521 U.S. 591, 613–14, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). Courts "engage in a 'rigorous analysis' of whether the conditions for maintaining a class action have been satisfied," Non–Traditional Employment for Women v. Tishman Realty and Constr. Co., 1989 WL 101940, at *1 (S.D.N.Y. Aug. 30, 1989) (Carter, J.) (quoting General

will raise questions of law and fact common to all proposed class members. See id. at 198–99.

6. Rule 23(b)(1)(B) states that a class action may be maintained if "the prosecution of separate actions by or against individual members of the class would create a risk of ... (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests." Plaintiffs satisfy this requirement because the prosecution of separate actions by individual class members concerning the Solicitation, and defendants' alleged breach of fiduciary duties owed to all Participants, would dispose of or substantially affect the rights of all Participants. See Ortiz v. Fibreboard, 527 U.S. 815, 119 S.Ct. 2295, 2308–09, 144 L.Ed.2d 715 (1999). Since plaintiffs have satisfied this requirement the court need not consider whether it has satisfied any of the other subparagraphs of Rule 23(b).

*Telephone Co. of the Southwest v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)), but will not consider the merits of plaintiffs' claims in their analyses, *see Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177–78, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). Moreover, "[i]n light of the importance of the class action device in securities fraud suits," the court construes Rule 23 liberally. *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 903 F.2d 176, 179 (2d Cir. 1990) *("Gary Plastic")*.

## I. Typicality

■ Defendants argue that plaintiffs' claims are not typical of the claims of the proposed class as required by Rule 23(a)(3).[7] Typicality "is satisfied when each member's claim arises from the same course of events, and each class member makes similar legal arguments to prove defendant's liability." *In re Drexel Burnham Lambert Group, Inc.,* 960 F.2d 285, 291 (2d Cir. 1992). Plaintiffs' claims meet this requirement because they arise from the same alleged misconduct directed towards all members of the proposed class, and assert legal arguments similar to those available to all members of the class—i.e., defendants violated federal securities and state common laws by publishing a misleading Solicitation, improperly bundling proxy votes, and breaching fiduciary duties owed to all Participants.

■ Defendants argue, however, that plaintiffs' claims are subject to unique defenses that render them atypical and make plaintiffs unsuitable class representatives. They contend that plaintiffs, as evidenced by their deposition testimony, never relied on the Solicitation in casting their votes, (Defs'. Mem. at 32–36); therefore any alleged omissions in the Solicitation, improper bundling of votes, or alleged self-dealing through the So-

licitation, was neither material to Koppel and Greenberg nor the cause of their injuries.

■ Plaintiffs subject to unique defenses which threaten to become the focus of litigation should not be certified as class representatives. *See Gary Plastic,* 903 F.2d at 180.[8] However, "the rule barring certification of plaintiffs subject to unique defenses is not rigidly applied in this Circuit"; it has generally been applied only where a full defense is available against an individual plaintiff's action. *In re Frontier Ins. Group, Inc. Secs. Litig.,* 172 F.R.D. 31, 41 (E.D.N.Y. 1997) *("Frontier")*; *see also Trief v. Dun & Bradstreet Corp.,* 144 F.R.D. 193, 200–201 (S.D.N.Y. 1992) (Edelstein, J.) (noting that unique defense rule is "intended to protect plaintiff class—not shield defendants from a potentially meritorious suit."). This comports with the general rule that "a representative may satisfy the typicality requirement even though that party may later be barred from recovery by a defense particular to him that would not impact other class members." *Trief,* 144 F.R.D. at 201; *see also Gary Plastic,* 903 F.2d at 180 (stating "mere existence of individualized factual questions with respect to the class representative's claim will not bar certification").

■ Defendants incorrectly assert that individualized questions of reliance, materiality and causation threaten to become the focus of this litigation and overwhelm plaintiffs' ability to effectively prosecute a class action. To establish causation under their § 14(a) claims, plaintiffs need not prove individual reliance; rather they need prove that defendants' omissions or misstatements were material. *See Koppel v. 4987 Corp.,* 167 F.3d 125, 137 (2nd Cir. 1999) ("It has long been clear that a plaintiff alleges sufficient causation when the plaintiff points to a material violation of the proxy rules in a situation where shareholder approval was necessary

---

7. Defendants do not argue that Greenberg's claim for unjust enrichment fails to satisfy the typicality requirement.

8. Courts sometimes analyze the question of unique defenses under the commonality requirement, *see Somerville v. Major Exploration, Inc.,* 102 F.R.D. 500, 503 (S.D.N.Y. 1984) (Carter, J.), or under the typicality requirement, *see Walsh v.*

*Northrop Grumman Corp.,* 162 F.R.D. 440, 446 (E.D.N.Y. 1995). Inasmuch as the "commonality and typicality requirements tend to merge into one another, so that similar considerations animate analysis" of both, the court considers case law discussing the issue of unique defenses in terms of both Rules 23(a)(2) and (a)(3). *Marisol A. v. Giuliani,* 126 F.3d 372, 376 (2d Cir. 1997).

for a company to complete an allegedly unfavorable transaction."); *Pellman v. Cinerama, Inc.,* 89 F.R.D. 386, 387–88 (S.D.N.Y. 1981) (Sofaer, J.). Since, on a motion for class certification, the court is barred from preliminarily inquiring "into the merits of the complaint to decide whether the alleged misrepresentations and omissions were material," defendants' argument plainly lacks merit. *Dura–Bilt Corp. v. Chase Manhattan Corp.,* 89 F.R.D. 87, 94 (S.D.N.Y. 1981) (Edelstein, J.). *See also Walsh v. Northrop Grumman Corp.,* 162 F.R.D. 440, 446–47 (E.D.N.Y. 1995); *Langert v. Q–1 Corp.,* 1974 WL 377, at *6 (S.D.N.Y. Mar. 15, 1974) (Carter, J.). This is equally true for plaintiffs' state law fraud and breach of fiduciary duty claims. *See Ackerman v. Price Waterhouse,* 252 A.D.2d 179, 683 N.Y.S.2d 179, 191–92 (N.Y. App. Div. 1998) (stating "where a defendant makes materially misleading omissions, justifying a presumption of reliance, class certification should not be denied on the ground that individual issues of reliance exist"); *Brandon v. Chefetz,* 106 A.D.2d 162, 485 N.Y.S.2d 55, 59 (N.Y. App. Div. 1985) (holding proof of individual reliance unnecessary in breach of fiduciary case involving fraudulent material omissions in tender offer solicitation).[9]

This conclusion is buttressed by the court's authority to order separate hearings concerning individual reliance insofar as it may become an element of proof. *See Green v. Wolf Corp.,* 406 F.2d 291, 301 (2nd Cir. 1968). This obviates any danger that such issues will become the focus of this litigation or work to disadvantage the proposed class.

■■■■ Defendants' argument that plaintiffs are subject to the unique defense that they ratified defendants' alleged misconduct by ultimately voting in favor of the Sale Program is unavailing. Ratification "must be performed with full knowledge of the material facts relating to the transaction," *Holm v. C.M.P. Sheet Metal, Inc.,* 89 A.D.2d 229, 455

N.Y.S.2d 429, 432 (N.Y. App. Div. 1982), and the crux of plaintiffs' claim is that they did not have full knowledge because the Solicitation failed to disclose material information about the Consensus Report.

■■■■ Defendants' argument that plaintiffs' common law claims raise unwieldy choice of law questions, because Participants reside in more than 30 states and three nations, is likewise unavailing. On a motion for class certification, "the court need not anticipate that variance may exist between the laws of the various states involved, nor hypothesize about what state law will be relevant." *Somerville v. Major Exploration, Inc.,* 102 F.R.D. 500, 504–505 (S.D.N.Y. 1984) (Carter, J.).

Defendants argue that Greenberg is subject to a unique defense on his claim for damages because he purposefully waited to sue until after the vote. Defendants correctly note the court's strong preference for plaintiffs to seek injunctive relief prior to a vote and not to sit on live claims hoping to collect damages afterwards. *See Koppel,* 167 F.3d at 137. This preference does not, however, provide a ground for denying class certification. The Second Circuit explicitly described Greenberg's action as potentially one of those cases where damages might be appropriate. *Id.* at 137–38 (stating that in cases, such as this one, "it may simply be impossible for a party to recognize the import of a bundling violation before the vote takes place as a result of the misleading proxy").

■■■ In addition, Greenberg's testimony, contrary to defendants' interpretation, does not indicate that he knew before the vote that he had valid legal claims, that he intentionally delayed bringing them in order to collect damages, and that defendants, if apprised of the alleged proxy violations, would

---

9. Courts have been particularly "unwilling to consider individual issues of materiality and reliance" as barriers to class certification both in cases involving "a [defendant's] common course of conduct," *Somerville,* 102 F.R.D. at 504 (discussing securities fraud claims), and in cases alleging material omissions in proxy solicitations, *see Pellman,* 89 F.R.D. at 387–88. This case falls under both characterizations. Plaintiffs allege that defendants engaged in a common scheme to fraudulently distribute sale proceeds by misleadingly omitting information from a proxy solicitation.

have willingly corrected them.[10] Even if Greenberg's claim for damages was suspect, "[t]he extent to which damages may differ among individual class members is not alone sufficient to defeat class certification." *Brickman v. Tyco Toys, Inc.,* 731 F.Supp. 101, 108 n.8 (S.D.N.Y. 1990) (Carter, J.).

The court is satisfied that the aforementioned issues do not threaten to become the focus of this litigation and thus are insufficient to deny plaintiffs' motion for class certification.

## II. Adequacy of Representation

Defendants argue that both Koppel and Greenberg will not fairly and adequately represent the proposed class as required by Rule 23(a)(4), F.R.Civ.P. Defendants variously argue that either Koppel, Greenberg or both are inadequate representatives because they have interests antagonistic to those of the proposed class, lack familiarity with their lawsuit, have a history of animus towards defendants, lack credibility due to inconsistent and unbelievable deposition testimony, and are untrustworthy due to their misconduct in initiating prior class action litigation.

In order to qualify as adequate representatives, plaintiffs must show "first, that there is an absence of conflict and antagonistic interests between them and the class members, and second, that the Plaintiff's counsel is qualified, experienced and capable." *German v. Federal Home Loan Mortgage Corp.,* 168 F.R.D. 145, 153 (S.D.N.Y. 1996) (Sweet, J.) (quotation marks and citation omitted). Defendants do not contest plaintiffs' counsel's qualifications, and the court is satisfied that counsel is sufficiently experienced in securities law and class action litigation to meet this second requirement.

Defendants argue that Greenberg's and Koppel's interests are antagonistic to those of the proposed class because, despite ample opportunity, no other Participant has joined their suit. This contention plainly lacks merit. The Second Circuit has stated that "the fact that no other shareholders have sought to intervene in [an] action, [is] not relevant to consideration of the adequacy of plaintiff's representation under Rule 23(a)(4)." *Green,* 406 F.2d at 298; *see also Langert,* 1974 WL 377, at *6. Contrary to defendants' argument, a "court must be wary of a defendant's efforts to defeat representation of a class on grounds of inadequacy when the effect may be to eliminate any class representation." *Kline v. Wolf,* 702 F.2d 400, 402 (2d Cir. 1983).

Defendants also incorrectly contend that Koppel suffers from "substantial failures of recollection and ... confusion about his own claims" which render him an inadequate representative. (Defs'. Mem. at 43.) "While a class representative must have knowledge of the facts necessary to support the 'essential allegations in his complaint,' in complex litigation such as securities actions, a plaintiff need not have expert knowledge of all aspects of the case." *Robbins v. Moore Medical Corp.,* 1992 WL 396423, at *2 (S.D.N.Y. Dec. 21, 1992) (Lasker, J.). *See also Trautz v. Weisman,* 846 F.Supp. 1160, 1168 (S.D.N.Y. 1994) (stating in complex actions plaintiffs may rely a great deal on counsel's expertise). Koppel's deposition testimony indicates that he has the requisite level of understanding of the basic facts and allegations in his lawsuit to meet this requirement.[11]

---

10. For example, Greenberg testified that when he read the Solicitation he only "suspect[ed]" the Consensus Report "might not" have taken into consideration the lessee's default, (*see Affirmation of Thomas E.L. Dewey,* Exhibit 2 at 151 (hereinafter "Dewey Affirm. Exh. at ___")), and that he had not "made any determination" at that time as to what he would do if the Sale Program was approved, let alone pursue legal action, (*id.* at 161–162). Although he testified that, at the time he read the Solicitation, he understood that he was unable to vote separately on the different aspects of the Sale Program, he

did not testify that he believed that the law might require them to be separated. (*Id.* at 159–160.)

11. For example, Koppel testified that: he received the Solicitation materials, read them, and returned his signed consent, (Dewey Affirm. Exh. 1 at 143–46); he understood that the Building was doing poorly financially (i.e., "was 50 percent rented" and "Malkin and his group defaulted on the mortgage and they did not pay the taxes"), (*id.* at 146, 151); he knew that the sale proceeds would be divided various ways and believed Malkin and others had "alloted [sic] themselves an unwarranted amount of money,

**368**

■ Defendants argue that Koppel has a longstanding animus towards Malkin, and his former partner Lawrence A. Wien, which makes him an inappropriate class representative. Defendants contend that Koppel ended a twenty-year friendship with the deceased Wien over investments in bowling alleys made in the 1950s; testified at various times in his deposition to the effect that he intrinsically mistrusted Malkin; and initiated litigation against both Wien and Malkin in the 1980s.

■ "While the law is clear that plaintiff's small personal animus is insufficient to render an otherwise qualified class representative inappropriate, an unduly antagonistic litigant, or a litigant who bears a grudge against the defendant is not an appropriate class representative." *Kamerman v. Ockap Corp.*, 112 F.R.D. 195, 197 (S.D.N.Y. 1986) (Kram, J.). Concededly, it is evident from Koppel's testimony that he mistrusts Malkin and his business associates. (*See, e.g.*, Dewey Affirm. Exh. 1 at 149–50.) Defendants' allegations, however, do not show that Koppel's lawsuit is motivated by a personal vendetta or any other improper purpose. *Cf. Kamerman*, 112 F.R.D. at 196–97 (describing plaintiff's "preoccupation with peculiar retaliatory wrongs" and his reassertion of claims already dismissed in a prior action for failure to state a claim).

Insofar as Koppel's anger with defendants' alleged misconduct motivates his lawsuit, it has not prompted any irrational or unduly antagonistic behavior that would impair his vigorous prosecution of this action or prevent his approval of any proper proposed settlement. *See Cosmas v. DelGiorno*, 1995 WL 62598, at *5 (E.D.N.Y. Feb. 8, 1995) (finding that plaintiff's evident anger at corporate defendants' behavior did not merit denial of class certification); *Robbins*, 1992 WL 396423, at *2 (rejecting charge of improper personal animus as reason to deny class certification inasmuch as plaintiff was also motivated by "what he believes to be

unfair behavior on the part of the corporate defendant").

■ Defendants argue that Greenberg will not be a proper fiduciary of the proposed class because fifteen years ago he instituted a class action against Wien, Malkin and WMB, which defendants claim was simply a vehicle for him to attempt to "extort" a buyout of his various interests in partnerships supervised by WMB. (Defs'. Mem. at 11.) Defendants assert that Greenberg was compelled to voluntarily dismiss his suit when his attempted "extortion" was brought to the court's attention. (*Id.*) Plaintiffs vigorously dispute defendants' characterization of the lawsuit; they assert that Greenberg's buyout efforts were unrelated to the investment that was the subject of the litigation, and that the stipulation dismissing the lawsuit nowhere refers to any such "extortion." (Pls'. Mem. at 18.)

■ Defendants are correct that a class representative is a fiduciary and that the interests of the class are "dependent on his diligence, wisdom and integrity." *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 549–50, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). However, in order "[t]o defeat class representation, any allegations concerning the representative's adequacy must be relevant to the claims in the litigation," *German*, 168 F.R.D. at 154, and must be "directed at improper or questionable conduct arising out of or touching upon the very prosecution of the lawsuit," *Jane B. v. New York City Dep't of Social Services*, 117 F.R.D. 64, 71 (S.D.N.Y. 1987) (Leisure, J.). Greenberg's alleged misconduct is too unsubstantiated and attenuated, in time and subject matter, to seriously call into question his ability to pursue this litigation and protect the interests of the proposed class. *See Cosmas*, 1995 WL 62598, at *5 (finding plaintiff's threat to initiate class litigation allegedly to extort a buyout from defendants did not merit denial of class certification).

Defendants argue that Greenberg's and Koppel's credibility is subject to sharp attack because of inconsistencies in their deposition testimony and in statements they made in prior lawsuits. They point out, for example, that Greenberg did not recall certain aspects

which I actually thought belonged to the owners of the building," (*id.* at 147, 150); and he knew

that two real estate appraisers had been engaged to assess the Sale Program, (*id.* at 147).

 

of a lawsuit he filed in 1985 against Wien, Malkin, and WMB, and that he was unwilling to agree with defendants' counsel's characterization during his deposition that a letter he had written to the defendants was a "threat." (Dewey Affirm. Exh. 2 at 72.) Defendants also assert that Koppel made allegedly untrue statements in prior litigation and that, during his deposition, he stated that he "imagines" that he read his complaint in the present action but does not "remember" doing so. (Dewey Affirm. Exh. 1 at 191.)

Defendants again raise concerns about matters that are not relevant to the issues in this case and which do not reflect plaintiffs' conduct in prosecuting this action. Defendants also incorrectly rely on cases denying class certification that are easily distinguishable because they involve seriously inconsistent and contradicted testimony much more egregious than that alleged here. *See Savino v. Computer Credit, Inc.,* 164 F.3d 81, 87 (2d Cir. 1998) (finding plaintiff "repeatedly changed his position . . . . about letters that form the very basis for his lawsuit"); *Panzirer v. Wolf,* 663 F.2d 365, 368 (2d Cir. 1981) (finding plaintiff "gave no less than four versions of her conversation with her broker" and that her testimony was contradicted by the broker); *Darvin v. Int'l Harvester Co.,* 610 F.Supp. 255, 257 (S.D.N.Y. 1985) (Sprizzo, J.) (finding plaintiff repeatedly changed his testimony). Given the weakness of defendants' claims, the court is mindful that "in the context of complex securities litigation, attacks on the adequacy of the class representative based on the representative's ignorance or credibility are rarely appropriate." *Frontier,* 172 F.R.D. at 46 (quotation marks and citation omitted).

## CONCLUSION

For the aforementioned reasons, the court grants plaintiffs' motion certifying them as representatives of a class consisting of all Participants in Associates from July 26, 1996, to October 31, 1996,[12] excluding the individu-

al defendants and their immediate family members.

**IT IS SO ORDERED.**

---

12. July 26, 1996, is the date of the Solicitation and October 31, 1996, is the date the Solicitation terminated.