**Jack TRIEF, et al., Plaintiffs,**

v.

**The DUN & BRADSTREET CORPORA-TION, Charles W. Moritz, and Robert N. Weissman, Defendants.**

No. 89 Civ. 1741 (DNE).

United States District Court, S.D. New York.

Sept. 22, 1992.

## OPINION & ORDER

EDELSTEIN, District Judge:

Plaintiffs have brought this suit pursuant to Rule 23 of the Federal Rules of Civil Procedure (the "Rules") on behalf of a class consisting of all persons who purchased Dun & Bradstreet Corporation common stock between October 2, 1986 and November 15, 1989 (the "Class Period"). Plaintiffs assert that defendants Dun & Bradstreet Corporation ("D & B"), Charles W. Moritz and Robert B. Weissman violated Sections 20(a) and 10(b) of the Securities Exchange Act of 1934 (the "1934 Act"), Securities and Exchange Commission ("SEC") Rule 10b–5, and committed common law fraud and negligent misrepresentation. This case is before the Court on a motion for class certification and a related motion by William M. Feldman to intervene both individually and on behalf of the class, pursuant to Rule 24(b)(2).

## BACKGROUND

The Dun & Bradstreet Corporation is a Delaware corporation with its principal place of business in New York. Charles Moritz is the Chairman and Chief Executive Officer of D & B. Robert E. Weissman is D & B's President and Chief Operating Officer. D & B is a holding company whose operations are divided into three segments: (1) Business and Information Services, which includes Dun & Bradstreet Credit Services ("D & B Credit Services"); (2) Publishing Services; and (3) Marketing Services. As of February 17, 1989, D & B had 187,177,507 shares of common stock outstanding, which were held by approximately 15,956 shareholders of record. D & B common stock is listed and traded on the New York Stock Exchange, as well as on several other domestic and international stock exchanges.

Plaintiffs' suit is based on the alleged unlawful practices of D & B Credit Services. D & B Credit Services supplies credit information to approximately 62,000 customers. It maintains an extensive data base containing financial, credit, and marketing information on more than thirteen million companies located in the United States and abroad. Through this data base, which is the largest of its kind in the world, D & B Credit Services controls approximately 90 per cent of the market for corporate credit information.

During the Class Period, D & B's SEC filings, other publicly available documents, and statements to the public indicated that D & B's earnings were growing and that D & B had complete confidence that its earnings would continue to grow. Meanwhile, according to plaintiffs, D & B developed a sales plan (the "Sales Plan") designed to defraud its customers. Plaintiffs contend that this Sales Plan led to an artificially inflated price for D & B stock.

The Sales Plan required those who wished access to D & B's credit reports to purchase and prepay for an annual subscription of "units" from D & B. The prepaid units were then traded for D & B credit reports. Plaintiffs allege that D & B deliberately encouraged customers to over-order units. For example, the Sales Plan placed a substantial premium on additional units ordered by a customer after the customer exhausted the initial allotment of units.

After inducing its customers to purchase more units than they might need, plaintiffs allege that D & B limited refunds and credits for those prepaid units that remained unused at the end of the year. Moreover, according to plaintiffs, D & B had full knowledge of every customer's unit usage, but as a matter of company policy it misled or failed to inform customers as to the amount of units they had consumed. Plaintiffs aver that, as a result of this scheme, customers were led to believe that they had used more units than they actually did, which induced them to renew their annual subscription of units in amounts greater than they would have had D & B provided accurate information.

Plaintiffs allege that as a consequence of the Sales Plan, D & B obtained hundreds of millions of dollars from defrauded customers, which artificially inflated D & B's earnings and revenues. Plaintiffs assert that, absent this scheme, D & B's net earnings during the Class Period would have been materially lower or nonexistent. The increased revenues resulting from the fraudulent activities had the accompanying effect of artificially inflating the price of D & B's common stock. As a result of this scheme, plaintiffs claim that they were fraudulently induced to purchase D & B stock and were subsequently economically harmed when the stock price fell.

In 1989, dissatisfied D & B customers began to complain that they had been charged for services that they had neither ordered nor received. On March 2, 1989, *The Wall Street Journal* published a front-page investigative article detailing allegations made by former D & B salesmen concerning misconduct in connection with the sale of units to customers. A number of D & B customers filed lawsuits against D & B. Defendants continued to deny any wrongdoing.[1] On June 23, 1989, D & B agreed to pay $18 million to settle a number of the lawsuits brought by D & B customers alleging fraud in connection with D & B Credit Services.

Plaintiffs further allege that throughout the period March 2, 1989 through November 15, 1989, D & B successfully withheld from the public the depth and nature of the consumer fraud scandal. Moreover, plaintiffs contend that D & B failed to reveal the true costs and impact that customer suits would impose upon D & B. On November 15, 1989, D & B disclosed for the first time that its earnings per share would

---

1. D & B continues to deny plaintiffs' allegations. According to defendants, "the alleged 'nationwide scheme' was, in truth, nothing more than a relatively small and isolated problem ... [that] arose in just a few of D & B's ... sales offices."

*Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification* ("Defendants' Memorandum in Opposition to Certification"), at 11–12.

fall; D & B blamed the fall on, *inter alia,* the March 2, 1989 *Wall Street Journal* article. After D & B's November 15, 1989 announcement, D & B's common stock traded at a substantially lower price than it had prior to the announcement.

Following this series of events, numerous suits were filed against D & B in courts throughout the country. By order of the Judicial Panel on Multi–District Litigation dated August 14, 1989, related actions against D & B, pending in other Federal District Courts, were consolidated in this Court. A single consolidated complaint was filed in this Court on August 24, 1989.

## DISCUSSION

### A. *Class Certification*

In evaluating whether class certification is appropriate, the Court must consider the factors enumerated in Rule 23 of the Federal Rules of Civil Procedure. In light of the importance of the class action device in the context of securities fraud litigation, the Second Circuit has held that these factors are to be construed liberally. *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 903 F.2d 176, 179 (2d Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 675, 112 L.Ed.2d 667 (1991) (citing *Green v. Wolf Corp.,* 406 F.2d 291, 295, 298 (2d Cir.1968), *cert. denied,* 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969)); *Korn v. Franchard Corp.,* 456 F.2d 1206, 1209 (2d Cir.1972). The class action procedure is singularly suited to securities fraud actions because in such cases "a large number of individuals may have been injured, although no one person may have been damaged to a degree which would have induced him to institute litigation solely on his own behalf." *Green,* 406 F.2d at 296 (citations omitted).

▆▆▆▆ Plaintiffs seeking class certification bear the burden of persuasion on disputed issues regarding certification. *See*

*Feinstein v. Firestone Tire and Rubber Co.,* 535 F.Supp. 595, 600 (S.D.N.Y.1982). In order to determine whether the class should be certified, a court must first consider whether plaintiffs have satisfied the factors listed in Rule 23(a) and, only if so satisfied, determine whether the requirements of Rule 23(b) have been met. *See In re Drexel Burnham Lambert Group, Inc.,* 960 F.2d 285, 290 (2d Cir.1992). Regardless of whether the class action is one that falls under Rule 23(b)(1), (b)(2) or (b)(3), no class action may be certified unless the prerequisites of Rule 23(a) are satisfied. *General Tel. Co. v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982); *Gary Plastic,* 903 F.2d at 180.

Rule 23(a) requires plaintiffs seeking class certification to show that: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims and defenses of plaintiffs are typical, and (4) plaintiffs will fairly and adequately protect the interests of the class. *See* Fed.R.Civ.P. 23(a). In addition, because this action is brought under Rule 23(b)(3), certification of the class is appropriate only if common questions of law or fact predominate over issues affecting only individual members, and if a class action is superior to other available methods for the fair and efficient adjudication of the controversy. *See* Fed.R.Civ.P. 23(b)(3).

Defendants raise several objections to class certification. First, defendants claim that the Class Period should be narrowed to include only those persons who purchased D & B shares between October 2, 1986 and March 2, 1989. The gravamen of their argument (made prior to William M. Feldman's motion to intervene) is that the named representatives of the class did not purchase shares after this date and thus lack standing to pursue an action under Section 10(b) of the 1934 Act with regard to purchases that occurred subsequent to March 2, 1989.[2] Second, defendants argue

---

2. Because the Court grants William M. Feldman's motion to intervene, *see infra* at 202–203, the Court does not reach the issue of whether the named class representatives (excluding Mr.

Feldman) would have standing to represent the interests of class members who purchased shares after March 2, 1989. It should be noted, however, that even absent Mr. Feldman's inter-

that two of the named representatives, Katherine Bassett and George Grover, cannot adequately protect the interests of the class and should therefore not be certified as class representatives.[3] Finally, defendants oppose William M. Feldman's motion to intervene in this suit.

Defendants concede that this action is appropriate for certification as a class action. *See Defendants' Memorandum in Opposition to Certification,* at 41.[4] While defendants accept that a class should be certified, they argue that the class should be narrowly drawn. *See id.* at 22.

### 1. Numerosity

■ Certification of a class action is appropriate when "the class is so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). Joinder of all members need not be impossible; rather, the numerosity requirement is satisfied when joinder of all putative class members would needlessly complicate and hinder efficient resolution of the litigation. 1 Herbert Newberg, *Class Actions* 171–76 (1977). Thus, "numbers in excess of forty, particularly those exceeding one hundred or one thousand have sustained the requirement." 3B James W. Moore et al., *Moore's Federal Practice* (hereinafter "3B Moore's"), at 23–143 to –145 (2d ed. 1987); *see also Korn,* 456 F.2d at 1209–10 (212 class members sufficient to satisfy numerosity requirement); *Mathis v. Bess,* 138 F.R.D. 390, 393 (S.D.N.Y.1991) (numerosity requirement satisfied by identification of 120 class members).

■ Plaintiffs allege, and defendants do not contest, that throughout the class peri-

od, D & B had in excess of 100,000,000 shares outstanding which were held by over 15,000 record holders and an undetermined number of beneficial owners. *See Plaintiffs' Memorandum of Law in Support of Their Motion For Class Action Certification* ("Plaintiffs' Memorandum in Support of Certification"), at 17. Millions of shares were traded during this period. *Id.* The potential membership in the class is therefore clearly amenable to certification as a class action. The Court finds that plaintiffs have made the showing required by Rule 23(a)(1) that joinder of all members of the putative class is impracticable.

### 2. Common Questions of Law and Fact

#### a. *Plaintiffs Have Met The Commonality Requirement of Rule 23(a)(2)*

■ Under Rule 23(a)(2) there must be "questions of law or fact common to the class" in order for a suit to be certified as a class action. Fed.R.Civ.P. 23(a)(2). The commonality requirement is designed to test "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Falcon,* 457 U.S. at 157 n. 13, 102 S.Ct. at 2370–71 n. 13. Commonality does not mandate that all class members make identical claims and arguments, only that common issues of fact or law affect all class members. *See Port Authority Police Benevolent Ass'n v. Port Authority,* 698 F.2d 150, 153–54 (2d Cir.1983). Generally, courts have liberally construed the commonality requirement to mandate a minimum of one issue common to all class members. *See In re Joint Eastern and*

---

vention, persuasive authority supports a finding that the current class representatives adequately represent class members who purchased D & B stock after March 2, 1989 because it is alleged that a common scheme or plan caused economic loss for all class members. *See, e.g., Green,* 406 F.2d at 301; *Kamerman v. Steinberg,* 1990 WL 3247, * 3, 1990 U.S. Dist. LEXIS 101, * 6 (S.D.N.Y. Jan. 9, 1990); *Dura–Bilt Corp. v. Chase Manhattan Corp.,* 89 F.R.D. 87, 100 (S.D.N.Y.1981).

**3.** Due to illness, plaintiffs Sylvia Adams and Sarah Shields have, by agreement of the parties,

withdrawn from consideration as class representatives. *See Plaintiffs' Reply Memorandum in Further Support of Their Motion For Class Certification and in Response to the Opposition of All Defendants to Plaintiffs' Motion For Class Certification,* at 2 n. 1.

**4.** "Defendants ... submit that only plaintiffs Jack Trief and Phi Kappa Theta National Foundation should be certified as class representatives...." *Defendants' Memorandum in Opposition to Certification,* at 41–42.

Southern Asbestos Litigation, *129 B.R. 710, 818 (S.D.N.Y.1991) (citations omitted).*

■ Issues relating to defendants' behavior during the relevant period are certainly common to all class members. The class members were allegedly injured in a similar manner—because of D & B's actions, investors were induced to purchase securities and suffered economic loss. Plaintiffs allege that defendants, by way of misstatements and omissions, materially misrepresented D & B's financial condition to the public. This conduct purportedly, *inter alia,* led the public to perceive that D & B was substantially more profitable than it in fact was, artificially inflated the price to earnings ratio of D & B stock, and caused D & B stock to trade at an artificial and illusory premium. Furthermore, plaintiffs allege that, upon publication in *The Wall Street Journal* of allegations concerning these matters, D & B continued to make materially false and misleading statements and omissions and hence continued to defraud investors. Even after publication of the *Journal* article, D & B's vehement denial of any wrongdoing allegedly led investors to purchase shares on the reasonable expectation that the published allegations were erroneous.

Moreover, recovery under the federal securities laws will require plaintiffs to prove that D & B did in fact engage in the behavior alleged. All plaintiffs are proceeding under a common legal theory of liability. These allegations, if their veracity is proven at trial, likely constitute a common scheme to keep from the market disclosure of D & B's true financial condition and probable future earning potential. As in *Nicholas v. Pughkeepsie Savings Bank/FSB,* where the court found the commonality requirement satisfied, "the main issue appears to be whether the market price of the ... stock was or was not artificially inflated by the defendants' public statements" or omissions. *Nicholas,* 1990 WL 213093, * 3, 1990 U.S.Dist. LEXIS 17143, * 7, [Current Transfer Binder] Fed. Sec.L.Rep. (CCH) ¶¶ 95,736, 98,493 (S.D.N.Y.1990).

In sum, in order to prevail on the merits, plaintiffs must demonstrate that D & B's actions constituted legally proscribed behavior, artificially inflated the market price for D & B stock, and caused plaintiffs' economic loss. In addition, to prevail on their Rule 10b–5 claim, plaintiffs must demonstrate that defendants acted with scienter. The Court thus finds that plaintiffs have satisfied the commonality requirement of Rule 23(a)(2).

b. *Plaintiffs Have Satisfied Rule 23(b)(3)'s Predominance and Superiority Requirements*

■ Rule 23(b)(3) requires that "the court find[ ] that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). The language and rationale of Rule 23(b)(3) compel special consideration of the relationship between the common and separate questions posed by a potential class suit. *See Caceres v. International Air Transp. Ass'n,* 46 F.R.D. 89, 92 (S.D.N.Y.1969). However, it is also crucial to keep in mind the Second Circuit's admonition that, in the context of securities fraud class actions, the requirements of Rule 23 should be liberally construed. *See Gary Plastic,* 903 F.2d at 179.

■ In the instant case the putative class members' claims arise from a common nucleus of operative facts: All plaintiffs' claims spring from an alleged common scheme or plan that artificially inflated the trading price of D & B shares and resulted in plaintiffs' economic loss. Moreover, plaintiffs sue on common legal theories, specifically violation of federal securities laws and common law fraud. In light of this commonality, and the fact that Rule 23 should be construed liberally in the context of securities fraud class actions, it is apparent that common issues predominate in satisfaction of Rule 23(b)(3).

The Court is well aware that here, as in any class action, certain defenses or proof may ultimately be required of some class

members but not others. To prohibit certification of a class on the basis of such speculation, however, would wholly negate the utility of the class action device and undermine the very policy that Rule 23 is intended to promote. The Court finds a predominance of common questions of law and fact sufficient to satisfy Rule 23(b)(3). *See* Fed.R.Civ.P. 23(b)(3).

Finally, the Court finds that a class action is superior to other methods available for resolving the instant suit. As a general matter, a class action is particularly well suited to resolution of securities fraud cases. *See, Green,* 406 F.2d at 295–96 (citing 3 Louis Loss, *Securities Regulation* 1819 (2d ed. 1961)). In litigation involving securities fraud there is often a plethora of small investors who, but for the class action device, would be deterred from filing suit in light of prohibitively high litigation expenses, the difficulties of proof at trial, and the relatively small stakes at issue for any given plaintiff. Indeed, such is the situation presented by this case. If class suit status is denied, it is likely that this potentially meritorious action will die. The availability of class action status allows plaintiffs vigorously to guard their rights and concurrently has the effect of facilitating enforcement of the federal securities laws. In light of these policy considerations and the facts of this case, the Court finds that a class action is the best available method for efficiently and fairly resolving the instant dispute.

### 3. Typicality

Rule 23(a)(3) provides that a class action may be maintained only if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." *See* Fed.R.Civ.P. 23(a)(3). Typicality does not, however, require that the representatives' claims be identical to those of the class members. *See* 3B Moore's, at 23–176 n. 12. Rather, typicality "is satisfied

when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *In re Drexel,* 960 F.2d at 291.[5]

Defendants prolixly contend that proposed class representative Katherine Bassett is not typical of the class because she will purportedly be subject to a "unique" defense based on her "recklessness." *Defendant's Memorandum In Opposition To Certification,* at 36. Defendants contend that Ms. Bassett and her stock broker failed to read the *Journal* article discussing the D & B Sales Plan on the day she purchased D & B stock. This recklessness defense, then, appears to be predicated on the somewhat spurious argument that, in order to maintain a claim under Rule 10b–5, one must first carefully review newspapers and periodicals published on the day that shares are purchased or else be charged with recklessness for failure to act on information contained therein. *Id.* at 33. Although the merits of this defense are not before the Court at this time, and decision on the validity of this defense is reserved pending further action in this matter, a careful review of Second Circuit precedent reveals that this defense will not be of sufficient import in a subsequent trial to disqualify Ms. Bassett from acting as a class representative.

The Court recognizes that a party should not be allowed to represent a class "if a major focus of the litigation will be on an arguable defense unique to the named plaintiff.... A representative plaintiff should not be permitted to impose such a disadvantage on the class." *Koos v. First Nat'l Bank,* 496 F.2d 1162, 1164–65 (7th Cir.1974). This rule has not been rigidly applied in this Circuit, however, and it is intended to protect plaintiff class—not to shield defendants from a potentially meritorious suit. Indeed, it is beyond reasonable dispute that a representative may sat-

---

**5.** Plaintiffs allege that D & B engaged in a scheme to defraud investors. It should be noted that, in cases analogous to the one currently before the Court, a number of courts have found the typicality requirement satisfied on the basis that the proposed representative was

harmed by a plan or scheme common to and affecting all members of the class. Such an allegation has been held to support a finding that the claims of the representative party are typical. 3B Moore's, at 23–174 (citing *Eisenberg v. Gagnon,* 766 F.2d 770 (3d Cir.1985)).

isfy the typicality requirement even though that party may later be barred from recovery by a defense particular to him that would not impact other class members. *See Werner v. Satterlee, Stephens, Burke & Burke,* 797 F.Supp. 1196, 1213–14 (S.D.N.Y.1992); *Mersay v. First Republic Corp.,* 43 F.R.D. 465, 469–70 (S.D.N.Y. 1968). It is well settled that the "mere existence of individualized factual questions with respect to the class representative's claim will not bar certification." *Gary Plastic,* 903 F.2d at 180. Based on the allegations currently before the Court, this Court finds that Ms. Bassett is not barred from acting as a class representative on the basis of the unique defense rule.

The Court finds that Jack Trief, Phi Kappa Theta National Foundation, Katherine Bassett, George Grover and William M. Feldman present claims and will be subject to defenses typical of the proposed class. As such, the Court finds that the proposed representatives meet the typicality requirement of Rule 23(a)(3).

### 4. Adequacy of Representation

■ Rule 23(a)(4) requires that, in order for a court to certify a class, it must find that "the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). A two-tiered inquiry must be conducted in order to test whether this requirement is met: The Court must determine whether plaintiffs' counsel is qualified and then examine whether plaintiffs have interests that might lead them to act in a manner inconsistent with the best interests of fellow class members. As the Second Circuit recently indicated: "Under Rule 23(a)(4), adequacy of representation is measured by two standards. First, class counsel must be 'qualified, experienced and generally able' to conduct the litigation. Second, the class members must not have interests that are 'antagonistic' to one another." *In re Drexel,* 960 F.2d at 291 (citations omitted).

■ As to the adequacy of representation afforded by the class representatives, defendants argue that Dr. George Grover "is not an adequate class representative because he ... is seeking to find a wrong, *not* to remedy one." *See Defendants' Memorandum In Opposition To Certification,* at 38 (emphasis in original). Based on statements made by Dr. Grover during the course of a deposition to the effect that he believed defendants had acted improperly but was uncertain whether they had acted illegally, defendants characterize his suit as a mere "fishing expedition." *See Defendants' Memorandum In Opposition To Certification,* at 39. Defendants contend that Dr. Grover's failure to make the legal judgment that defendants acted illegally disqualifies him from serving as a class representative. In support of this proposition defendants cite *Segal v. Gordon,* 467 F.2d 602, 607–08 (2d Cir.1972).

In *Segal,* the Second Circuit indicated that a "complaint alleging fraud should be filed only after a wrong is reasonably believed to have occurred." 467 F.2d at 607–08. This Court agrees that law suits are not intended to be used merely as investigative vehicles. Nevertheless, nothing in *Segal* requires a putative class plaintiff, generally a lay person, to make a *legal* determination as to the propriety of defendant's actions. As this Court has held, "detailed knowledge on the part of non-lawyers of what acts might create liability under [Rule] 10b–5 cannot be expected and is not required of a class representative." *Dura–Bilt,* 89 F.R.D. at 103 (citations omitted).

The Court finds that plaintiff Dr. Grover is not engaged in a mere fishing expedition but rather, in good faith, believes that defendants acted wrongly. His deposition is replete with references indicating he was "convinced there was something wrong." *See e.g.,* Deposition of Dr. George Grover, at 67. Dr. Grover therefore possesses adequate knowledge of the facts surrounding this case to act as a class representative.

Defendants do not dispute the adequacy of plaintiffs' counsel, Goodkind Labaton Rudoff & Sucharow. The Court finds that plaintiffs are adequately represented by counsel.

■ Finally, the Court finds that the proposed class representatives do not have interests adverse to the class as a whole. As discussed above, plaintiffs' claims arise from a common nucleus of facts and plaintiffs are proceeding on the same legal theory. While the class representatives purchased their shares at different times, the D & B actions that allegedly resulted in plaintiffs' economic harm were part of a continuing and related series of events. *See supra* at 195–196, 199–200.

### B. *Motion of William M. Feldman to Intervene*

■ Defendants contend that the proposed class representatives cannot represent the interests of class members who purchased D & B shares subsequent to March 2, 1989 because none of the proposed representatives purchased shares after that date. In an apparent effort to allay defendants' objection in this regard, plaintiffs filed a motion for William M. Feldman to intervene as a representative of the proposed class (the "Feldman Motion"), pursuant to Rule 24(b)(2) of the Federal Rules of Civil Procedure. Rule 24(b)(2) authorizes permissive intervention "when an applicant's claim or defense and the main action have a question of law or fact in common." Fed.R.Civ.P. 24(b)(2). Intervention of class representatives to ensure adequate class representation is highly desireable. *See Manual for Complex Litigation*, Second, § 30.15, at 216 (to protect class members' interests "[r]eplacement of the class representative sometimes becomes necessary or desireable.... If replacement is needed, the Court may permit intervention by a new representative.").

In response to the Feldman Motion defendants argue that plaintiff Feldman's claims are time barred under the statute of limitations for Section 10(b). *See Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, —— U.S. ——, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991). Defendants contend that, because he did not file the instant motion prior to November 15, 1990, one year after the date defendants claim Feldman had inquiry notice of the alleged fraud, his motion to intervene both personally and as class representative should be denied. Defendants also rely on *Korwek v. Hunt*, 827 F.2d 874 (2d Cir.1987), to oppose the Feldman Motion. Defendants argue that, under *Korwek*, the filing of a class action tolls the statute of limitations for individual but not for class claims. *See Defendants' Memorandum of Law in Opposition to Motion to Intervene*, at 15–17. Thus, defendants conclude that Mr. Feldman should not be permitted to intervene on behalf of the class.

■ Commencement of a class action complaint or motion to certify a class tolls the running of the statute of limitations against all members of the putative class. The Supreme Court has held that "the rule most consistent with federal class action procedure must be that commencement of a class action suspends the applicable statute of limitations as to all asserted members · of the class...." *American Pipe and Constr. Co. v. Utah*, 414 U.S. 538, 554, 94 S.Ct. 756, 766, 38 L.Ed.2d 713 (1974).

■ Later intervention by a member of the class is not barred if the original class action was timely filed. As the Supreme Court has held, "Once the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied. At that point, class members may choose to file their own suits or intervene as plaintiffs in the pending action." *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 353–54, 103 S.Ct. 2392, 2397–98, 76 L.Ed.2d 628 (1983). This rule is predicated on the proposition that an intervenor that reasonably expected to be represented in the originally filed action possesses an inchoate interest in the class action running from the original date of filing. *See* 3B Moore's, at 23–523.

*Korwek* does not alter this result. The *Korwek* holding is explicitly limited to the "narrow" question of whether the *American Pipe* tolling rule applies to "permit the filing by putative class members of a subsequent class action nearly identical in scope to the original class action which was denied certification." *Korwek*, 827 F.2d at 876. The *Korwek* court held that the

*American Pipe* rule did not apply in that context because to allow tolling would provide counsel an opportunity to " 'piggyback one class action onto another and thus toll the statute of limitations indefinitely.' " 827 F.2d at 878 (citations omitted). In this limited context, the *Korwek* court feared that counsel could stretch the *American Pipe* tolling rule to the point where attorneys were able to file repetitive class action suits at the cost of judicial efficiency.

■ Neither the *Korwek* holding, nor the logic supporting it, is applicable to the Feldman Motion. The Feldman Motion falls squarely within the domain of *American Pipe* and *Crown, Cork*. Plaintiffs' motion for class certification purported to include plaintiffs who, like Mr. Feldman, purchased shares of D & B stock after March 2, 1989. Mr. Feldman could reasonably have believed that he was included in the putative class. Mr. Feldman's intervention—in essence prompted by defendants' concern with adequacy of representation—merely makes his inclusion explicit. Indeed, important policy considerations support his inclusion because Mr. Feldman's presence will ensure that all interested plaintiffs are represented. As such, Mr. Feldman is the type of plaintiff that the *American Pipe* tolling rule is designed to protect: The *American Pipe* tolling rule allows putative class members to wait on the sidelines, rather than forcing them to congest the courts with defensively filed suits designed solely to guarantee that such plaintiff's claims are not arbitrarily precluded by the running of a statute of limitations.

Therefore, plaintiffs' filing of this class action tolled the statute of limitations as applied to plaintiff Feldman. The *Korwek* case is inapposite on the facts of this case. Because the Court finds that Mr. Feldman is an adequate class representative pursuant to the requirements to Rule 23 of the Federal Rules of Civil Procedure, and that his motion to intervene is timely, the Feldman Motion must be granted.

### CONCLUSION

In sum, the orders of this Court are as follows:

IT IS HEREBY ORDERED that William M. Feldman's motion to intervene both individually and as representative on behalf of all class members is GRANTED in its entirety.

IT IS FURTHER ORDERED that plaintiffs' motion for class certification is GRANTED.

IT IS FURTHER ORDERED that the class shall be comprised of all persons (other than the defendants, or any officer, director, or partner of any defendant, members of their immediate families or entities controlled by them) who purchased Dun & Bradstreet Corporation common stock between October 2, 1986 and November 15, 1989.

IT IS FURTHER ORDERED that Jack Trief, Phi Kappa Theta National Foundation, Katherine Bassett, George Grover and William M. Feldman shall act as representatives of the class.

SO ORDERED.