Del DIETRICH, Plaintiff,

v.

Richard BAUER; Groupe Scorpion, B.V.; Jack T. Dawson; Green–Cohn Group; Morton Cohn; Van D. Greenfield; Leonard Schwalb; CS First Boston; Bear Stearns; Smith Benton & Hughes, Inc.; Michael Zaman; Claudia Zaman; Emmet A. Larkin & Company; Painewebber; Oppenheimer & Co., Inc.; Edward Fisch; Barry Witz; Mario V. Andrade; Westfield Financial Corporation; Idata, Inc.; Robert Bogutski, and Kathleen Bogutski, Defendants.

No. 95 Civ. 7051(RWS).

United States District Court,
S.D. New York.

March 16, 2000.

Lieff, Cabraser, Heimann & Bernstein, New York City, by Steven E. Fineman, Rebecca M. Katz, of counsel, Lieff, Cabraser, Heimann & Bernstein, San Francisco, CA, by Richard M. Heimann, of counsel, Goodkind Labaton Rudoff & Sucharow, New York City, by Lawrence A. Sucharow, James W. Johnson, of counsel, Starr & Holman, New York City, by Zachary Alan Starr, of counsel, for plaintiff.

Rosenman & Colin, New York City, by Arthur S. Linker, Julie Pechersky, of counsel, for defendants Green–Cohn Group Inc. and Van D. Greenfield.

Blank Rome Tenzer Greenblatt, New York City, by Lawrence S. Feld, James G. Greilsheimer, of counsel, for defendant Barry Witz.

## OPINION

SWEET, District Judge.

The plaintiff in this securities fraud action, Del Dietrich ("Dietrich"), has moved to certify a class, pursuant to Rule 23, Fed.R.Civ.P., of all persons or entities who purchased or otherwise acquired shares of Scorpion Technologies, Inc. ("Scorpion") during the period from and including May 13, 1992, through and including December 31, 1994. For the reasons set forth below, Dietrich's motion to certify the class is granted.

### Facts and Prior Proceedings

The facts, parties, and prior proceedings in this action are set forth in the prior opinions of this Court and of the Honorable Lawrence

M. McKenna, familiarity with which is assumed. *See Dietrich v. Bauer*, 76 F.Supp.2d 312 (S.D.N.Y.1999) (*"Dietrich II"*); *Dietrich v. Bauer*, No. 95 Civ. 7051(LMM), 1996 WL 709572 (S.D.N.Y. Dec.10, 1996) (*"Dietrich I"*).

In this action, Dietrich has alleged defendants' participation in two essentially separate but interrelated fraudulent schemes involving Scorpion stock. First, Dietrich has alleged that between May of 1992 and late 1994, the defendants were involved in an unlawful scheme to sell unregistered securities issued pursuant to Regulation S (the "Regulation S scheme"). Second, Dietrich alleges that, during the week of January 18, 1993, various defendants participated in a scheme to fraudulently create and manipulate market demand for Scorpion stock (the "Market Manipulation scheme").

Dietrich's essential allegations concerning the Regulation S scheme are as follows. According to Dietrich, in 1991 and early 1992, Scorpion sought to register a secondary offering of its common stock for public sale, and filed a registration statement and amendment to that end. However, in February of 1992, the SEC informed Scorpion that it was under investigation, and the registration was withdrawn in recognition of the fact that the ongoing investigation would frustrate Scorpion's efforts to obtain SEC approval for the offering.

Thereafter, in an effort to raise desired capital, Scorpion, through its officers, directors, and others, orchestrated a plan to sell unregistered securities domestically by issuing stock pursuant to Regulation S— which governs the issuance and sale of unregistered securities outside of the United States. According to Dietrich, significant numbers of Regulation S shares were transferred to foreign entities, some of which were controlled by the defendants in this action, the sole function of which was to re-transfer the Scorpion stock to broker/dealers within the United States for sale to the public. The scheme was purportedly developed in order to avoid the registration of Scorpion's common stock and the various broker/dealer defendants are asserted to have functioned essentially as underwriters and sellers of an illegal secondary public offering.

Dietrich's allegations concerning the Market Manipulation scheme focus on events transpiring during the week of January 18, 1993. According to Dietrich, various defendants artificially created market demand for Scorpion stock by disseminating false rumors of institutional interest in the company's shares and of inflated earnings expectations, thus setting in play a dynamic by which the price of Scorpion's shares and the volume of trading increased dramatically. Dietrich also asserts that various defendants in this action fraudulently increased the trading volume of Scorpion stock by engaging in "wash" sales or similar transactions.

In August of 1995, Dietrich filed his initial complaint in this action, alleging violations of sections 12(1) and 12(2) of the Securities Act of 1933, 15 U.S.C. § 77$l$(1) and (2), (the "1933 Act"); Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), (the "1934 Act"); Securities and Exchange Commission ("SEC") Rule 10–b5, 17 C.F.R. § 240.10b–5, promulgated thereunder; the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962, ("RICO"); Sections 25110, 25130, 25401, 25501, 25503, and 25504.1 of the California Corporations Code; and Section 17200 *et seq.* of the California Business Professions Code, as well as related claims for common law fraud and negligent misrepresentation. In a December 10, 1996 opinion, Judge McKenna dismissed the complaint in its entirety, granting Dietrich leave to replead. *See Dietrich I*, 1996 WL 709572, at *11.

Dietrich filed an amended complaint (the "Amended Complaint") on February 10, 1997. Subsequent to this amendment and the exchange of further motion papers, the case was reassigned to this Court. In an opinion issued on March 4, 1999, several of Dietrich's repleaded claims were once again dismissed, though other claims withstood defendants' various challenges. *See Dietrich II*, 76 F.Supp.2d at 352. Dietrich filed another amended complaint (the "Second Amended Complaint") on April 20, 1999.

The instant motion was filed on June 16, 1999. Opposition papers were received from defendants Green Cohn Group, Inc. ("Green–Cohn") and Van D. Greenfield ("Greenfield"),

as well as defendant Barry Witz ("Witz") (collectively "the Objecting Defendants"). After several postponements, oral argument was heard on November 10, 1999, at which time the matter was deemed fully submitted.

### Discussion

Dietrich seeks to certify the following class, and to prosecute its claims in the instant litigation:

> All persons or entities who purchased or otherwise acquired shares of Scorpion Technologies, Inc. during the period from and including May 13, 1992 through and including December 31, 1994.

Dietrich himself purchased shares in Scorpion on three separate occasions. Dietrich's first purchase, a $2,275 investment in September of 1991, was outside the class period. Dietrich's other purchases, in September of 1991 and December of 1993, were in the respective amounts of $1,033 and $1,131. Dietrich has not sold his Scorpion stock.

The Objecting Defendants oppose class certification on various grounds, most of which relate to Dietrich's suitability as class representative, his susceptibility to "unique" defenses, and questions about his and proposed counsel's representation of the class' best interests. More specifically, the Objecting Defendants contend that Dietrich's motion should be denied because, *inter alia:* (1) Dietrich is not a typical open-market purchaser of Scorpion, as he was introduced to Scorpion by its president, Terry Marsh ("Marsh"), with whom Dietrich has had continuing business contacts; (2) Dietrich's contacts with Marsh, as well as his failure to name Marsh as a defendant in this action, raise questions about his representation of the class; (3) Dietrich's claims are atypical of the class, and he is subject to unique defenses, given his receipt of certain information concerning the company, ongoing disclosures regarding investigations of Scorpion, and the timing and circumstances of his December 1993 purchase of Scorpion stock; and (4) proposed counsel would have conflicting interests in this action and an action presently pending in the Northern District of California, in which counsel represents a class of Scorpion shareholders asserting that the market price of Scorpion was inflated as the result of a fraudulent scheme to misrepre-

sent Scorpion's reported earnings. *See In re Scorpion Tech. Sec. Litig.,* No. C 93–20333–RPA, 1994 WL 774029 (N.D.Cal. Aug.10, 1994).

### Application of Rule 23

Rule 23(c)(1), Fed.R.Civ.P., provides that "[a]s soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained." *See In re Blech Sec. Litig.,* 187 F.R.D. 97, 102 (S.D.N.Y.1999) (citations omitted).

■ It is worth noting at the outset that the only question to be determined at this stage in the litigation is whether the demands of Rule 23 have been met, *see id.,* and that the Second Circuit has "traditionally favored the use of class actions for the resolution of securities law claims, in particular those brought under Rule 10b–5." *In re Avon Sec. Litig.,* No. 91 Civ. 2287, 1998 WL 834366, at *4 (S.D.N.Y. Nov.30, 1998) (collecting cases). Given this favorable view of the class action device, courts have applied Rule 23 in liberal fashion when considering claims brought under the securities laws. *See id.; see also In re Blech,* 187 F.R.D. at 102 ("Class action treatment of related claims is particularly appropriate when plaintiffs seek redress for violations of the securities laws.... Accordingly, in an alleged securities fraud case, when a court is in doubt as to whether or not to certify a class action, the court should err in favor of allowing the class to go forward") (*citing Eisenberg v. Gagnon,* 766 F.2d 770, 785 (3d Cir.1985)).

This being said, courts may certify a class action only after undertaking a "rigorous analysis," ensuring that the requirements of Rule 23 have been satisfied. *General Tel. Co. v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982).

### The Requirements of Rule 23

Rule 23(a) provides that:

> [o]ne or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative

parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In order to certify a class, the Court must first find that all of Rule 23(a)'s criteria have been met. If so, the Court's inquiry then proceeds to whether at least one of Rule 23(b)'s requirements has been satisfied. *See In re Drexel Burnham Lambert Group, Inc.,* 960 F.2d 285, 290 (2d Cir.1992). Those requirements are as follows:

An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Each of these criteria shall be considered in turn below.

### Numerosity

Rule 23(a)(1) requires that the plaintiff class be "so numerous that joinder of all members is impracticable." For the purposes of Rule 23(a), "impracticability" means difficulty or inconvenience of joinder—not impossibility. *See Northwestern Nat'l Bank of Minneapolis v. Fox & Co.,* 102 F.R.D. 507, 510 (S.D.N.Y.1984). Joinder need only be impracticable in the sense that joinder would "needlessly complicate and hinder efficient resolution of the litigation." *Trief v. Dun & Bradstreet Corp.,* 144 F.R.D. 193, 198 (S.D.N.Y.1992).

■ There is little question but that the numerosity requirement has been met in this case. While the number of class members is not set forth in the Second Amended Complaint, and while Dietrich's papers do not supplement the pleadings with a firm estimate, the class could well number in the hundreds or thousands. Scorpion was freely traded on the NASDAQ National Market System. According to Dietrich, in September of 1992, approximately 22.5 million shares of Scorpion common stock were outstanding, and as of February 28, 1992, those shares were held by approximately 582 record holders.

Dietrich's failure to set forth the specific number of Scorpion shareholders comprising the contemplated class does not preclude a finding of compliance with Rule 23(a)(1), as a precise calculation of the number of class members is not required. *See In re Avon Sec. Litig.,* 1998 WL 834366, at *5. Plaintiffs in class actions "may rely on reasonable inferences drawn from the available facts in order to estimate the size of the class," *In re Blech,* 187 F.R.D. at 103, and it is reasonable in this case to infer that the class is sufficiently large to meet Rule 23(a)'s numerosity requirement. *See In re NASDAQ Market–Makers Antitrust Litig.,* 169 F.R.D. 493, 509 (S.D.N.Y.1996); *In re Chase Manhattan Corp. Sec. Litig.,* No. 90 Civ. 6092(LJF), 1992 WL 110743, at *1 (S.D.N.Y. May 13, 1992).

The Objecting Defendants have not challenged the numerosity of the proposed class, and the Court therefore finds that the putative class meets the numerosity requirement of Rule 23(a)(1).

*Commonality*

■ Rule 23(a)(2) demands that there be "questions of law or fact common to the class." This does not mean, however, that all class members must make identical claims and arguments, or that the circumstances of their stock purchases must be the same. *See In re Avon,* 1998 WL 834366, at *6. The commonality requirement has been applied permissively by courts in the context of securities fraud litigation, and minor variations in the class members' positions will not suffice to defeat certification. *See Green v. Wolf Corp.,* 406 F.2d 291, 300 (2d Cir.1968); *In re Blech,* 187 F.R.D. at 104; *In re Crazy Eddie Sec. Litig.,* 135 F.R.D. 39, 41 (E.D.N.Y.1991).

Though there are significant differences between the claims concerning the Regulation S scheme and the Market Manipulation scheme, the distinctions between these two schemes do not merit the denial of class certification. Common questions as to the issuance of misrepresentations or nondisclosure of material information abound, as do common questions concerning share valuation, scienter on the part of the defendants, causation, and damages. Moreover, the overlapping and interlacing nature of the schemes alleged means that many of the victims of one will also be victims of the other. While it may well be the case that the demands of both fairness and practical trial administration could, at some point, require the designation of subclasses pursuant to Fed.R.Civ.P. 23(c)(4), or some other remedial action, the parties have not addressed their papers to this issue. *See In re NASDAQ,* 169 F.R.D. at 509.

The Court therefore finds that Rule 23(a)(2)'s commonality requirement has been met. However, leave is granted, as is necessary, for any party to urge the creation of subclasses.

*Typicality*

Under Rule 23(a)(3), "typicality" requires that a "class representative 'have the incentive to prove all the elements of the cause of action which would be presented by the individual members of the class were they initiating individualized actions.'" *In re NASDAQ,* 172 F.R.D. at 126 (*quoting Daniels v. Amerco,* 1983–1 Trade Cas. (CCH) ¶ 65,274, 1983 WL 1794 (S.D.N.Y. March 10, 1983)). As this Court previously noted in *In re NASDAQ,* Rule 23(a)'s typicality requirement is established:

> where ... the claims of the representative Plaintiffs arise from the same course of conduct that gives rise to the claims of the other Class members, where the claims are based on the same legal theory, and where the class members have allegedly been injured by the same course of conduct as that which allegedly injured the proposed representatives.

169 F.R.D. at 511 (citations omitted); *see In re Drexel Burnham Lambert Group,* 960 F.2d at 291 (typicality requirement satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability"); 1 Newberg on Class Actions, § 3.13 at 3–77 (3d ed.1999) (typicality requirement usually met "[w]hen it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented"). Typicality refers to the nature of the claim of the class representative. *See In re Lloyd's Am. Trust Fund Litig.,* No. 98 CIV 1262(RWS), 1998 WL 50211, at *7 (S.D.N.Y. Feb.6, 1998) (collecting cases).

"Typicality, however, does not require that the situations of the named representatives and the class members be identical." *In re NASDAQ,* 169 F.R.D. at 511; *see Trief,* 144 F.R.D. at 200. If this were so, it is doubtful that any class actions could be maintained.

The Objecting Defendants have pressed that Rule 23(a)(3)'s typicality requirement has not been satisfied, as Dietrich's claims are atypical of other plaintiffs and he is subject to "unique" defenses. Though many of their objections have been raised on "typicality" grounds, a good deal concern the adequacy of Dietrich's representation of absent classmembers. These shall be considered separately in the Court's discussion of Rule 23(a)(4). To the extent that the Objecting Defendants raise proper typicality-type ob-

jections, they contend, *inter alia*, that concerns are raised by the fact that (1) Dietrich was initially introduced to Scorpion stock by Marsh, Scorpion's President, and that Dietrich regularly received facsimiles of Scorpion news releases; (2) that Dietrich's third purchase of Scorpion shares came after the wide dissemination of negative publicity concerning Scorpion; and (3) that Dietrich purchased shares of Scorpion in 1993 at its twelve-month low, and was unaware of any rumors concerning the stock or institutional interest therein.

■ While it is the case that the existence of individualized factual questions will typically not bar class certification, the Objecting Defendants are correct in observing that certification is properly denied where class representatives are "subject to unique defenses which threaten to become the focus of the litigation." *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir.1990). However, as Judge McKenna observed in *In re Avon*, this rule has not been rigidly applied in this Circuit, and "a representative may satisfy the typicality requirement even though that party may later be barred from recovery by a defense particular to him that would not impact other class members." 1998 WL 834366, at *6 (*quoting Trief*, 144 F.R.D. at 201). Moreover, the existence of individual questions concerning reliance is generally insufficient to defeat certification. *See Korn v. Franchard Corp.*, 456 F.2d 1206, 1212 (2d Cir.1972); *In re AM Int'l Inc. Sec. Litig.*, 108 F.R.D. 190, 194 (S.D.N.Y.1985).

■ The Objecting Defendants' protestations notwithstanding, Rule 23(a)'s typicality requirement has been met in this case. Dietrich's claims of fraud arise out of the same Regulation S and Manipulation schemes as the rest of the putative class, and are premised upon the same legal basis.

■ That Dietrich received certain information by fax concerning Scorpion, or that he professes to be unaware of various news articles and disclosures concerning Scorpion's troubles, makes little difference given the nature of Dietrich's claims in this case. After all, every investor in Scorpion will presumably have relied on differing amounts of publicly-available information in making his or her investment decisions, and Dietrich's access to corporate releases by way of facsimile would hardly expose him to defenses that could be considered "unique." Furthermore, because this action has been maintained, in part, under a fraud on the market theory, individual peculiarities in reliance are not nearly so important as the Objecting Defendants would appear to assume.[1] According to Dietrich's deposition testimony, Dietrich relied heavily on market pricing and volume information in making his investment decisions. This places his claims squarely in line with those of the other plaintiffs in this proposed class action.

Moreover, while the Objecting Defendants have suggested that Dietrich may be subject to unique defenses arising out of his contact with Marsh, nothing in the record indicates that Dietrich's decision to purchase Scorpion stock was based on information obtained from Marsh. The record does not indicate that Dietrich was privy to information not otherwise available to other investors.

---

1. It is true that courts have found a particular class representative inadequate where that representative did not rely on a misleading statement or on the integrity of the market. *See In re Avon*, 1998 WL 834366, at *7 (collecting cases; identifying possibility that "one who purchases securities after the alleged fraud has been disclosed may be subject to unique defenses"). In their efforts to bring this case under the ambit of those decisions, the Objecting Defendants have highlighted the fact that Dietrich's December 1993 purchase of Scorpion shares came only after the publication of various negative articles and disclosures concerning Scorpion.

Setting aside the fact that Dietrich alleges to have relied upon the integrity of the market, the issuance of such articles and disclosures hardly exposes Dietrich to unique defenses. While information was publicly available prior to Dietrich's 1993 purchase concerning investigation of financial statement fraud at Scorpion and other corporate infirmities, and while the Objecting Defendants have pointed to Scorpion's disclosure in an August 1993 SEC filing that it was the subject of an SEC investigation concerning its 1992 and 1993 Regulation S share sales, none of the releases or articles flagged actually conceded the existence of the fraudulent schemes at issue in this litigation. Indeed, the present record reveals that, far from providing any curative disclosure, Scorpion either publicly denied or remained silent concerning the validity of the accusations at issue.

### Adequacy of Representation

■ Rule 23(a)(4) requires that class representatives will fairly and adequately protect the interests of the class. In the Second Circuit, gauging the adequacy of representation requires an assessment whether the class representatives have interests antagonistic to those of the class they seek to represent, as well as an evaluation of the capabilities and qualifications of the class representative's counsel. *See Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 562 (2d Cir.1968); *Dean v. Coughlin*, 107 F.R.D. 331, 334 (S.D.N.Y.1985).

No serious issue has been raised as to the diligence and capacity of the proposed class counsel, whose experience in like matters has been noted. The Objecting Defendants have not contended, for example, that Dietrich's counsel will not be able to handle a complex class action securities litigation such as this, or that the firm's prosecution of the instant action has been in any way deficient over the past five years.

Rather, the Objecting Defendants principally contend that (1) Dietrich cannot adequately represent the interests of the class, given the nature of his ties to Marsh, Scorpion's erstwhile President, and his inexplicable failure to name Marsh as a defendant in this action; (2) Dietrich's counsel cannot represent the proposed class in this action, as the firm is presently prosecuting a parallel action, *In re Scorpion*, on behalf of another class allegedly defrauded by Marsh, his brother James, and Scorpion's accounting firm.

These contentions are without merit.

■ First, with respect to proposed counsel's maintenance of a parallel class action on behalf of the plaintiffs in *In re Scorpion*, it is worth noting that the California action has been maintained against a completely different set of defendants. Thus, while there is overlap in the two plaintiff classes, in that the California action certified a class comprising those Scorpion investors who purchased or otherwise acquired Scorpion common stock from September 19, 1991 through May 7, 1993, the maintenance of parallel actions against different defendants does not pit one class against the other in terms of satisfying a potential judgment. In other words, unlike the cases cited by the Objecting Defendants, *see Kuper v. Quantum Chem. Corp.*, 145 F.R.D. 80, 83 (S.D.Ohio 1992); *Jackshaw Pontiac v. Cleveland Press Publ'g Co.*, 102 F.R.D. 183, 192 (N.D.Ohio 1984); *Sullivan v. Chase Investment Servs. of Boston*, 79 F.R.D. 246, 258 (N.D.Cal.1978), the Court is not presented with a situation in which counsel simultaneously represents classes in parallel litigations seeking to tap the same pool of finite assets.

Second, it is worth noting that the specific "conflict" identified by the Objecting Defendants is essentially limited to loss calculation and damages.[2] However, even where similar conflicts have been identified in opposition to certification of a particular class action, the presence of such conflicts has not prevented certification. *See In re Gaming Lottery Sec. Litig.*, 58 F.Supp.2d 62, 69–70 (S.D.N.Y.1999) (rejecting defendants' position that conflict

---

**2.** Defendants highlight the alleged conflict by referring to expert disputes in *In re Scorpion*, in which the parties have jousted over whether Scorpion's price inflation is attributable solely to the named defendants' financial statement fraud, or to other factors—such as the concealment of reportable sales by large beneficial holders involved in the Regulation S scheme alleged in the instant action. According to the Objecting Defendants:

> Dietrich thus is asserting inconsistent positions in this action and the California class action. There, in furtherance of the financial statement fraud claim, plaintiffs contend that the market price of Scorpion stock was inflated solely because of the financial statement fraud, and that the concealment of the stock sales by the Regulation S holders had no impact on the value of the stock. Here, in contrast, Dietrich

contends that it was the Regulation S scheme that inflated the market price of the stock and was the cause of the claimed damages. In this action, Dietrich presumably will argue that the damages were caused not by the financial statement fraud that forms the basis for the claims pending in the California class action, but by the Regulation S scheme.

Setting aside the fact that the record is not nearly so clear as the Defendants assert concerning the existence of an actual conflict between the *In re Scorpion* class and the putative class considered herein, any such conflict would essentially be a conflict about damages calculation. The conflict would arise out of differing positions concerning the amount of price "inflation" attributable to the fraudulent schemes alleged by the respective plaintiff classes.

existed between "in-and-out" purchaser of securities, who had incentive to maximize price inflation at the moment of his purchases and minimize inflation at time of sales, and interests of other classmembers who sold stock at different times or retained stock throughout class period). If such conflicts have been found not to bar the certification of a unitary class and the appointment of counsel for that class, it is difficult to see why the existence of a similar "conflict" should bar appointment of class counsel in this case—where the conflict alleged involves claims in different actions against different defendants.

■ Third, a review of the record reveals that Dietrich's contacts with Marsh are not such as would give rise to questions concerning Dietrich's representation of the plaintiff class. As Dietrich notes, his relationship with Marsh consists of one business transaction in early 1990, when Scorpion leased a commercial property through the real estate firm where Dietrich was employed, a few chance encounters at Dietrich's building during 1995, and an abortive effort by Dietrich in 1995 or 1996 to help Marsh obtain storage space for a new company. Dietrich was compensated by the landlord in connection with the 1990 transaction, and Dietrich's failure to name Marsh as a defendant in this action does not raise questions about his representation of the class.

In this case, Dietrich's interests in proving that the defendants engaged in both the Regulation S scheme and the Market Manipulation scheme are aligned with those of the putative class, and the Objecting Defendants have not demonstrated that "any asserted 'conflict' is so palpable as to outweigh the substantial interest of every class member in proceeding with the litigation." *In re NAS-DAQ*, 169 F.R.D. at 514–15. The Objecting Defendants have not identified any interests that Dietrich might have that are "potentially antagonistic to the interests of absent class members." *Shankroff v. Advest, Inc.*, 112 F.R.D. 190, 194 (S.D.N.Y.1986). Moreover, to the extent that any conflicts do develop within the class certified, or between Dietrich and the class, these conflicts may be addressed by way of appointment of subclasses or replacement class representatives. Despite the concerns raised by the Objecting Defendants, who are no doubt vitally concerned that this action be vigorously litigated and that the plaintiff class recover everything to which it is entitled, no such conflicts are apparent at the present time.

### Rule 23(b)(3)

In addition to meeting the prerequisites of Rule 23(a), an action must satisfy at least one of the three conditions of subdivision (b) of Rule 23. Dietrich requests that the Court certify a class pursuant to Rule 23(b)(3), which provides that certification is appropriate if:

> the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

In determining whether common questions of fact predominate, a court's inquiry is directed primarily toward whether the issue of liability is common to members of the class. Indeed, "[w]hen determining whether common questions predominate courts 'focus on the liability issue . . . and if the liability issue is common to the class, common questions are held to predominate over individual questions.'" *Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 114 F.R.D. 48, 52 (S.D.N.Y.1987) (*quoting Dura–Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 93 (S.D.N.Y.1981)); *see In re Crazy Eddie Sec. Litig.*, 135 F.R.D. at 41 ("[P]laintiffs assert claims which raise the same common and predominating issue of defendants' liability. While defendants may have defenses against them lacking against other class members, Rule 23(b)(3) does not require that all issues in a class action be communal.").

■ As set forth above, common questions of law and fact relating to liability exist as to all members of the class. These questions predominate over any questions affecting individual members alone. *See In re Arakis Energy Corp. Sec. Litig.*, No. 95–CV–3431 (ARR), 1999 WL 1021819, at *10 (E.D.N.Y. Apr.27, 1999) ("In securities fraud class actions in which the fraud is alleged to have been carried out through public commu-

nications to a wide variety of market participants, common issues of law and fact will generally predominate over individual issues."). The complaint alleges that the defendants engaged in a scheme to defraud by manipulating and inflating the prices at which Scorpion shares were sold to the investing public, and by deliberately offering unregistered shares for sale to the public. Such conduct constitutes a "common course of conduct." *See Green*, 406 F.2d at 300. Thus, even if each class member were to bring an individual action, each would be required to prove the existence of the alleged activities of the defendants in order to prove liability. Accordingly, plaintiffs have made the showing necessary under the first prong of Rule 23(b)(3).

In addition, given the circumstances of the instant action, the Court finds that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

Because class action treatment is superior to any other available method for the "fair" and "efficient" adjudication of this case, the requirements of Rule 23(b)(3) are fully satisfied. If insurmountable management problems develop at any point, class certification may be revisited under Fed.R.Civ.P. 23(c)(1) and 23(c)(4)(B).

*Conclusion*

For the reasons set forth above, Dietrich's motion for class certification shall be granted.

It is so ordered.